AMON S. GILBERT

*v.*

WALLACE G. BONE.

1. MARRIAGE—*declaration in suit against clerk for issuing license.* In a suit by a father against a county clerk to recover the statutory penalty for issuing a license for the marriage of plaintiff's minor daughter, the material facts to be alleged in the declaration are, that the plaintiff was the father of such minor, that the defendant was clerk of the county court of the county, and as such issued the license without plaintiff's consent, and that the daughter was then in fact a minor.

2. MARRIAGE LICENSE—*justification of clerk in issuing.* As the statute has conferred power upon the clerk to ascertain the age of the parties sought to be married, by examining the parties or other witness under oath, which power is *quasi* judicial, it follows that when the exercise of this power is properly invoked by an application for a license, and the same honestly exercised by the examination of either of the parties or other witness on oath, and the evidence produced tends to prove that the person whose age is the subject of inquiry has attained his or her majority, and the clerk so decides, he will not be liable to the statutory penalty, although he may have decided erroneously.

3. SAME—*jurisdiction must be shown—plea.* The jurisdiction of the clerk to determine the majority of the parties to be married is known as *voluntary* in contradistinction to contentious jurisdiction. It is the application for a license, either by or on behalf of the parties to be married, which calls the power into exercise, no action or legal process being necessary. Therefore, a plea of justification showing an examination, is bad in substance unless it shows that jurisdiction was conferred by an application.

4. SAME—*age of parties, how to be ascertained.* The statute authorizing the clerk to ascertain the age of those seeking a marriage license, contemplates a *personal* examination on oath of the parties proposed to be married, or other witnesses. A plea attempting to justify by showing that the clerk acted upon the *affidavit* of one of the parties in determining the age of the other, is bad in substance.

5. PLEADING—*plea must answer all it professes.* In a suit by a father against a county clerk for issuing a license for the marriage of plaintiff's daughter, one count of the declaration charged that defendant, at the time he issued the license, had notice that the daughter was a minor. The defendant filed a plea to the whole declaration, in which he attempted to justify by showing an examination of a witness: *Held,* that the plea was bad, for if defendant knew the fact of minority he could not have acted honestly in issuing the license on the oath of a witness.

WRIT OF ERROR to the Circuit Court of Warren county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. J. M. KIRKPATRICK, for the plaintiff in error.

Mr. JOHN J. GLENN, for the defendant in error.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

This was an action of debt, in the Warren circuit court, brought by the plaintiff, as the father of Ophelia Gilbert, against the defendant, as clerk of said county, to recover the penalty prescribed by the 10th section of the act concerning marriages (R. S. 1845, p. 354), for the issuing by defendant, as such clerk, of a marriage license authorizing marriage between Emery S. Haradon and said Ophelia Gilbert, without the consent of the plaintiff, he being her father, and she, at the time, a minor under the age of eighteen years.

The declaration contains four counts, each of which sets out a cause of action as above set forth, and much surplusage.

The defendant, besides the usual plea of *nil debet,* filed a special plea in bar to the whole declaration, to the effect that before issuing the license he, as clerk, etc., for the purpose of ascertaining the age of the said Emery S. Haradon and Ophelia Gilbert, respectively, examined the said Haradon on oath

touching the ages of the said Ophelia Gilbert and the said
Emery S. Haradon; and it appearing from the testimony *and*
*affidavit* of the said Haradon that he, the said Haradon, was
twenty-one years of age, and that the said Ophelia Gilbert
was then of the age of eighteen years, and defendant, *believing*
the said testimony *and affidavit* to be true, and *relying* upon the
truth of said testimony *and affidavit*, issued the marriage li-
cense mentioned, as he was legally authorized to do as such
clerk—concluding with a verification.

To this plea there was a special demurrer. The causes as-
signed were: 1st, that, as to the first and third counts, the
plea amounted to the general issue. 2d, that it is double.

The court overruled the demurrer, and the plaintiff electing
to abide by his demurrer, judgment of *nil capiat* was rendered
against him, and he brings the record to this court by writ of
error, and assigns for error the judgment of the court over-
ruling his demurrer.

The sufficiency of the plea must be tested by other stand-
ards than either of the special causes of demurrer assigned.
The surplusage in the counts of the declaration mentioned
affords no sufficient ground for the position, that, as to such
counts, the plea amounts only to the general issue. The plain-
tiff can not go beyond the facts necessary to a cause of action
in his declaration, and allege other matters by way of antici-
pating the defendant's defense. This is admissible in a bill
in equity, but not in a declaration at law. It is upon the in-
troduction of such matters, some of which are indirectly
traversed by the plea, that it is said the plea amounts to the
general issue. This position is not tenable, nor is the other,
that the averments respecting the examination touching Har-
adon's age, made the plea bad for duplicity. That was mere
surplusage, and does not vitiate.

The plea is one of confession and avoidance. It traverses
no material allegation of the declaration, and impliedly ad-
mits all such as are well pleaded. It admits, by not travers-
ing, the allegations that, plaintiff was the father of Ophelia;

that defendant was clerk, etc., and as such issued the marriage license without plaintiff's consent; and that the daughter was then, in fact, a minor, under the age of eighteen years. These facts were all material to the cause of action, and well pleaded. One count alleges that defendant, at the time, had notice that Ophelia was then a minor. That is not traversed.

Two questions naturally arise for consideration:

(1.) Whether, in any case where the clerk, without the consent of the father, issues a license authorizing the marriage of the daughter, and she be, *in fact*, a minor, under the age of eighteen years, at the time, such clerk, when sued for the penalty under section 10, can justify and avoid the penalty by setting up an examination of a witness on oath, for the purpose of ascertaining her age, and his finding thereupon as conclusive.

(2.) If he can, whether the matters set up in this plea are sufficient to establish such defense.

The first of these questions will be more easily determined by a consideration of the general purpose of the statute in question. The statute was designed to regulate, as far as practicable, this most important institution of civilized society, by prescribing the modes of marriage and preserving the evidence in each case. But its general policy was the encouragement, not the restraint, of marriage. Hence, we find modes for its celebration, at once simple, free from embarrassment, and adapted to the condition, convenience and preferences of every class of society. No penalties are imposed upon the parties uniting in marriage, for non-compliance with any of its provisions, nor does the statute make the modes therein prescribed indispensable to a valid marriage. Without publication, a license is required; but to secure the obtaining of it, a penalty is imposed upon the minister or officer of the law, authorized to celebrate a marriage, for doing so without the production of a license issued by the county clerk. A certificate of the marriage is required to be made by the minister or officer of the law, and returned to the county

clerk who issued the license, with the license, if there be one, within a specified time, and such clerk is required to file such certificate and make a registry of such marriage. This duty is enforced, not by requiring the parties married, or either of them, to attend to its observance, but by the imposition of a penalty upon the minister and officers of the law for its omission.

The general policy of the statute is not only to encourage marriages, but to encourage their celebration in the manner prescribed, so that they may be, in a measure, public, and capable of proof by the registry or the certificate on file in the clerk's office, or a certified copy thereof.

There is also an intention manifested to preserve, as far as practicable, the control of parents and guardians over their minor children or wards, in respect to the marriage relation. The first section of the act declares that "all male persons over the age of seventeen, and females over the age of fourteen, may contract and be joined in marriage: *Provided,* in all cases when either party is a minor, the consent of parents or guardians be first had as is hereinafter required."

The ninth section says that "no persons shall be joined in marriage as aforesaid unless their intention to marry shall have been published at least two weeks previous to such marriage, in the church or congregation to which the parties, or one of them, belong, or unless such persons have obtained a license, as herein provided." Then the tenth section declares that, in all cases where publication, etc., has not been made, as before described, the parties intending to marry shall obtain a license from the clerk, etc.; then after prescribing what the license shall be, it proceeds: "but no license shall be granted for the marriage of any male under twenty-one years of age, or female under the age of eighteen years, without the consent of his or her father, or if he be dead or incapable, of his or her mother or guardian, to be noted in such license; and if any clerk shall issue a license for the marriage of any such minor, without consent as aforesaid, he shall forfeit and pay the

sum of $300 to the use of such father, mother or guardian, to be sued for and recovered in any court having cognizance thereof; and *for the purpose of ascertaining the age of the parties,* such clerk is hereby authorized *to examine either party, or other witness, on oath.*"

Now it is very apparent that, if the clause prescribing this penalty stood alone, and was not followed by the subsequent clause, the policy of the statute to encourage marriages under its provisions, would be, in a great measure, defeated; because, in a large majority of cases, the clerk would be deterred from issuing the licenses for fear of incurring the penalty. To avoid this result, the last clause was added. The jurisdiction here conferred is very analogous to that of a probate court, termed voluntary jurisdiction.

In speaking of the classification of jurisdictions of ecclesiastical courts, Dr. Burn says: "Voluntary jurisdiction is exercised in matters which require no judicial proceedings, as in granting probate of wills, letters of administration, sequestration of vacant benefices, institution and such like; contentious jurisdiction is where there is an action or judicial process, and consisteth in the hearing and determining of causes between party and party." 1 Burn's Ecclesiastical Law, 292.

The power to be exercised is *quasi* judicial. It being a voluntary jurisdiction, there must be a voluntary application for a marriage license, either by or on behalf of the parties whose marriage is to be the subject of the license.

It is the application for a license which calls the power into exercise. No action or judicial process is necessary for that purpose.

When the power is properly called into exercise by an application for a marriage license, and is honestly exercised within its proper scope by the examination of either of the parties or other witness on oath, and the evidence produced fairly tends to prove that the person whose age is the subject of inquiry has attained his or her majority, and the clerk so

decides, then, upon recognized principles of law, the clerk is protected, although he may have decided erroneously.

In *Kendall* v. *Stokes et al.* 3 How. U. S. Rep. 98, the court say : " But a public officer is not liable to an action if he falls into error in a case where the act to be done is not merely a ministerial one, but is one in relation to which it is his duty to exercise judgment and discretion, even although an individual may suffer by his mistake. A contrary principle would indeed be pregnant with great mischiefs. It is unnecessary, we think, to refer to the many cases by which this doctrine has been established. It was fully recognized in the case of *Gidley, Ex. of Holland,* v. *Ld. Palmerston,* 7 J. B. Moore, 91 ; 3 B. & B. 275."

*Towpkins* v. *Sands,* 8 Wend. 462. It is otherwise where he has no judicial power, or discretion at all. Ld. Brougham, in *Ferguson* v. *Earl of Kinnoul,* 9 Clark & Finnelly Rep. 289, 290.

It is undoubtedly the general rule, that individuals charged with disobedience to penal laws can not exonerate themselves on the ground of good faith or error of judgment; and it has been held that no excuse of this kind will avail against the peremptory words of a statute imposing a penalty. If the prohibited act has been done, the penalty must be paid. *Calcraft* v. *Gibbs,* 5 Term R. 19 ; *Caswell* v. *Allen,* 7 Johns. R. 63 ; *Morris* v. *The People,* 3 Denio, pp. 381, 402.

It is the opinion of a majority of the court that this case does not come within the principle of the cases just cited. If the clerk had not been clothed with the power of examining witnesses, and determining the question of age, his good faith would be no excuse. As it is, the case is like charging a statutory officer for an error in judgment in the performance of a duty involving the exercise of judgment and discretion, and the rule is well settled that, if he have jurisdiction and act honestly within the scope of his authority, he will be protected against errors of judgment, in analogy to the rule

of public policy, that a judicial officer will be protected whenever he has jurisdiction, and a case is presented calling for his decision, no matter how great the error of judgment which he commits, may be.

The plea, however, is bad in substance, (1) because it does not aver that an application was made to defendant, as clerk, for license to Haradon and Ophelia Gilbert to marry. The clerk can not act of his own motion, or upon his own suggestion. Such an application was indispensable to call into exercise the power to examine into the age of Ophelia Gilbert. (2.) The plea shows that the defendant acted upon the *affidavit* of Haradon in determining the question of the age of Ophelia. The statute contemplates a personal examination, on oath, of the parties proposed to be married, or other witnesses. It was a wise policy on the part of the legislature not to include affidavits. Their admission would open the door to every sort of imposition. (3.) Because the declaration alleges that the defendant, at the time of issuing the license, had notice that Ophelia was under age, and this is not traversed by the plea, which is pleaded to the whole declaration. If defendant had notice of her minority, he could not have acted honestly in issuing the license on Haradon's mere oath or affidavit.

For the error in overruling plaintiff's demurrer to this plea, the judgment must be reversed and the cause remanded, with directions to the court below to sustain the demurrer and permit the defendant to amend.

*Judgment reversed.*