GEORGE W. NAGLE

v.

JEREMIAH WAKEY et al.

*Filed at Ottawa May 12, 1896.*

HIGHWAYS—*liability of commissioners for failure to keep bridge in repair.* Commissioners of highways who have, in good faith and to the best of their ability, expended the means at their command upon the roads and bridges of their town, are not liable for an injury to one who was thrown, with his team and wagon, from a bridge because of the alleged negligence of the commissioners in failing to provide such bridge with railings. *Tearney* v. *Smith*, 86 Ill. 391, distinguished. (PHILLIPS and MAGRUDER, JJ., dissenting.)

*Nagle* v. *Wakey*, 59 Ill. App. 198, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of LaSalle county; the Hon. CHARLES BLANCHARD, Judge, presiding.

BREWER & STRAWN, for appellant:

It is not sufficient for the commissioners to show they had no funds at the time of the accident. *Warren* v. *Clement*, 24 Hun, 472; *Smith* v. *Wright*, 24 Barb. 170; *Eveleigh* v. *Town of Hounsfield*, 34 Hun, 140; *Adsit* v. *Brady*, 4 Hill, 630; *Lament* v. *Haight*, 44 How. Pr. 1; *Rector* v. *Pierce*, 3 Th. & Cook, 418; *Allen* v. *Sisson*, 66 Hun, 140; *Ivory* v. *Town of Deer Park*, 116 N. Y. 476.

The duty of commissioners to repair bridges in the highway is ministerial, and not judicial. *Tearney* v. *Smith*, 86 Ill. 391; *Skinner* v. *Morgan*, 21 Ill. App. 209; *Wood* v. *Town of Gilboa*, 76 Hun, 175; *State* v. *Damaree*, 80 Ind. 522; *Piercey* v. *Averill*, 37 Hun, 360; *McCord* v. *High*, 24 Iowa, 336.

One who assumes the duties and is invested with the powers of a public officer is liable to an individual who sustains special damages by a neglect to properly perform such duties. *Hover* v. *Barkhoof*, 44 N.Y. 113; *Bennett* v. *Whitney*, 94 id. 302; *Bryant* v. *Town of Randolph*, 133 id.

70; *Allen* v. *Sisson,* 66 Hun, 143 ; *Wood* v. *Town of Gilboa,* 76 id. 175; *Adsit* v. *Brady,* 4 Hill, 632; *Smith* v. *Wright,* 24 Barb. 170; *Piercey* v. *Averill,* 37 Hun, 360; *McCord* v. *High,* 24 Iowa, 336; *Huffman* v. *San Joaquin,* 21 Cal. 426; *Mayor* v. *Henley,* 23 Eng. C. L. 32, and 27 id. 366; *Commissioners* v. *Duckett,* 20 Md. 468.

The same doctrine is held in this State. *Allen* v. *Michel,* 38 Ill. App. 313; *Tearney* v. *Smith,* 86 Ill. 391; *Hotz* v. *Hoyt,* 135 id. 388; *Skinner* v. *Morgan,* 21 Ill. App. 209.

There is no distinction maintained in this State between acts of omission and acts of commission, involving negligence. *Cooney* v. *Town of Hartland,* 95 Ill. 516; *Hollenbeck* v. *County of Winnebago,* 95 id. 148.

When the loss is the combined result of accident and defect, and the damages would not have been sustained but for the defect, the plaintiff can recover, if not in fault. *Joliet* v. *Shufeldt,* 144 Ill. 403; 42 Ill. App. 208; *Ivory* v. *Town of Deer Park,* 116 N.Y. 476; *Hunt* v. *Town of Pownal,* 9 Vt. 411; *Palmer* v. *Andover,* 2 Cush. 600; *Morris* v. *Litchfield,* 35 N. H. 271.

MAYO & WIDMER, and SNOW & HINEBAUGH, for appellees:

The commissioners were called upon to exercise their judgment, in view of the means at their command, as to what repairs were most needed and should be first made, and we maintain that this discretion and judgment will not be reviewed or controlled by any court. *Commissioners* v. *People ex rel.* 19 Ill. App. 253.

Nor can they be held personally liable in damages for a failure to exercise their judgment in the same manner that some other persons might have exercised their judgment relative to repairs or improvements necessary to be made on the highways and bridges in the town. *Neinsteil* v. *Smith,* 21 Ill. App. 235; *Pickerell* v. *Kunst,* 15 id. 461.

Per CURIAM: After a careful examination of the record in this case we perceive no ground for disturbing the judgment of the Appellate Court. It will therefore be affirmed. As the grounds upon which the judgment was reversed are fully stated in the opinion of the Appellate Court, in which we concur, that opinion will be adopted as the opinion of this court. It is as follows:

"CARTWRIGHT, J.: Appellant brought this suit against appellees, and by the first count of his declaration alleged that they were, and for a long time had been, acting as commissioners of highways of the township of Grand Rapids, in LaSalle county, and had the care, superintendence, possession and control of a bridge in a highway of the township, and ought to have kept it in good and safe repair and condition, and had adequate material, money and labor for that purpose, yet wrongfully and negligently suffered it to be in bad and unsafe repair and condition, with no railing or other protection to prevent a team and wagon from falling off, and of insufficient width, and that while he was driving across said bridge with all due care, one of the horses was caused to jump against the other by the noise of the frosty plank snapping, and he and the team were thrown off the bridge at the side and his leg was broken at the hip joint. The second count is the same as the first, except that it charged that appellees wrongfully, negligently and unskillfully built, and permitted to be built and remain, the bridge in the condition stated, and that the horses suddenly took fright and swerved to one side, whereby appellant and the team were thrown off the side of the bridge and appellant's leg was broken at the hip joint. A trial was then had under a plea of the general issue, and resulted in a verdict for plaintiff for $100. Both parties entered motions for a new trial, which were overruled by the court and judgment was entered on the verdict. Both parties have assigned errors upon the record.

"At the trial plaintiff proved that defendants were commissioners of highways of the town of Grand Rapids. The defendant Jeremiah Wakey had held that office for eight years, and the defendants Englebert Sauter and W. A. Dickerman had held the office since the spring of 1891. The bridge in question was located on a north and south road over a place where there was probably four or five inches in depth of water for a width of four feet. It was fourteen feet wide and eighteen feet long, and consisted of seven floor joists resting on mud sills and covered with planking. The floor was from three and one-half to four and one-half feet above the channel beneath, and there was no railing at the sides and never had been while the defendants were in office. In 1892 the bridge was old, and the defendants repaired it by putting in some new joists or stringers and covering it with new planking, so as to make it safe for steam threshing machines. It was left in the same condition in other respects as before. On November 28, 1893, plaintiff was driving north on the highway, going after a hog, with a span of horses and a lumber wagon with side-boards on top, and when on the bridge the horse on the left side was frightened and crowded the other one off the east side. Plaintiff went over with the wagon and his leg was broken at the hip joint.

"To sustain his charge that defendants had means in their hands to put up a railing or protection so that his team could not have gotten off, plaintiff proved the amounts paid to defendants for road and bridge taxes in 1892 and 1893. Defendants, to meet the charges of plaintiff, proved that there were eighty-three bridges in their town to be cared for by them. Of these bridges seventy-one were of wood, seven were of iron and five were stone arches. In 1892 there were unusual floods, and most of the bridges were damaged and four were carried away. Those that were washed away had to be replaced and the damaged ones repaired. Five new iron bridges were

built in 1893, and the moneys at defendants' command had all been exhausted before the accident, and they had exceeded their funds to the amount of $1300. They exercised their best judgment in the expenditure of the moneys on the roads and bridges of the town, and there was no evidence tending to prove any intentional neglect of duty or improper motive in what was done.

"Complaint is made in behalf of appellant that errors occurred on the trial in rulings on the admissibility of evidence and instructing the jury, and that the damages awarded were inadequate ; but it will not be necessary to notice any of these questions, for the reason that, in our judgment, the action could not be maintained, and the cross-errors assigned should be sustained.

"Whether an action will lie against commissioners of highways for damages resulting to an individual from the manner in which they have discharged their official duty to the public, on the ground that it was not discharged with reasonable prudence and skill, has not been settled in this State by any decision of the Supreme Court. It has often been decided that an action for such damages cannot be maintained against the town. (*Hedges* v. *County of Madison*, 1 Gilm. 567; *Town of Waltham* v. *Kemper*, 55 Ill. 346; *Bussell* v. *Town of Steuben*, 57 id. 35.) And these decisions that there is no common law liability of towns in that regard are in accordance with the authorities generally. Although duties are specifically enjoined upon towns by law, and they have power to levy taxes and raise money for their performance, they are not liable, in a common law action, for damages sustained by an individual on account of such action being neglected or inadequately performed. *Russell* v. *Devon*, 2 T. R. 661; *Riddle* v. *Proprietors*, etc. 7 Mass. 169; *Mower* v. *Leicester*, 9 id. 247; *Eastman* v. *Meredith*, 36 N. H. 284.

"The reasons always given for exempting towns from such actions are, that they are established as local subdivisions and agencies of the State for governmental

purposes, and that duties are imposed upon them without their assent, exclusively for public purposes. The same reasons apply, with at least equal force, to commissioners of highways as an agency through which a town performs a public duty. Any person elected to that office who shall refuse to serve is subject to a penalty of $25. (Rev. Stat. chap. 139, art. 9, sec. 7.) The purpose of that penalty is to enforce the acceptance of the office, and its payment does not discharge one elected to a town office from the duty of acceptance and performance. He must yield to the public welfare, and the office is regarded as a burden, which he is bound, in the interest of the public, to bear, to the end that the government may be carried on. (*People ex rel.* v. *Williams*, 145 Ill. 573.) The office is not one of profit, for the public only compensate a commissioner at about the rate of a day laborer. If he should neglect to perform any of the duties enjoined upon him while acting, the public injury renders him liable to a penalty of not less than $10 nor more than $50. The office and its duties are compulsory, and are imposed upon the individual for public purposes, in like manner as upon the town. The courts draw a distinction between the town and the municipal corporation proper, on the question of liability, in favor of the town, and it would seem most unjust to reverse the rule as to the town officer and hold him to the same responsibility as a city or other municipal corporation. It is questionable whether such a rule would tend to any better service of the public. If the officer must answer out of his private fortune for what a jury may regard as a deficiency in judgment, men capable of filling the office, who have any property, would naturally avoid it,—especially in view of the extent of the industry of bringing damage suits covering with duties and neglects every field of imagination as well as of fact. The statute has provided means for redressing the public wrong by a penalty, and that is sufficient to enforce the public duty.

"It is provided by section 2 of the statute in regard to roads and bridges as follows: 'The commissioners of highways shall have the charge of the roads and bridges of their respective towns, and it shall be their duty to keep the same in repair, and to improve them so far as practicable.' They are clothed with the discretion as to the practicability of making improvements and as to the best methods to be employed. *Hotz* v. *Hoyt*, 135 Ill. 388.

"Attention is called by counsel to the decision in *Tearney* v. *Smith*, 86 Ill. 391, as establishing the doctrine that repairing a highway is a ministerial act, and that the commissioners are responsible for damages for the negligent performance of such an act. Even if it is proper to call the act of repairing a highway or bridge ministerial, it is a duty which unquestionably involves the exercise of judgment and discretion as to time, method and means, and is readily distinguishable from such ministerial duty as merely involves the following of specific directions and instructions. It was immaterial in that case whether the act should be characterized as ministerial or not. It was a suit by an adjoining land owner for flooding his land in draining the highway, and the defendants could not have done that in a judicial or ministerial capacity. The court said that the underlying principle in the case was, that the public had no right so to use its own as to injure another, and that the principle obtained as to townships. The duty to the plaintiff was not a public one, and was not owing to the public generally who might have occasion to use the road, but was a duty to him as an adjoining proprietor. The relations in such cases are the same, and the parties are governed by the same rules as adjoining land owners. (*Young* v. *Comrs. of Highways*, 134 Ill. 569.) The case is not authority for a rule that commissioners are liable in a case like this. Commissioners may be sued for trespass if they enter upon lands of an individual, claiming the existence of a highway where there is none, because the entry is an invasion of

individual right, but it does not follow that an individual may sue where the only right is in the general public.

"The towns make their selections of commissioners to exercise their judgment and discretion in repairing and improving the roads and bridges of the towns, and when the public have had a fair and honest exercise of that judgment and discretion they have got all that we think they are entitled to. It would be against reason to elect commissioners to use their best judgment and then sue them for doing it. We do not think that the commissioners, who in good faith and to the best of their ability have expended the means at their command where they seemed to them most needed, can be called upon to justify their judgment to the satisfaction of a jury at the peril of their savings. It has been held that an action of this character would not lie in the following cases: *Bartlett* v. *Crozier*, 17 Johns. 438; *Lynn* v. *Adams*, 2 Ind. 143; *McKanzie* v. *Chevin*, 1 McMul. 222; *Young* v. *Commissioners*, 2 Nott & McC. 537; *Dunlap* v. *Knapp*, 14 Ohio, 64; *McConnell* v. *Dewey*, 5 Neb. 385.

"The decision in *Bartlett* v. *Crozier*, *supra*, that an action would not lie against an overseer of highways at the suit of an individual for an injury which he had sustained in consequence of the neglect of the overseer to keep a bridge in repair, was quoted approvingly in *Hollenbeck* v. *Winnebago County*, 95 Ill. 148, and later decisions in New York of a different character were ignored.

"Being of the opinion that plaintiff had no right of action, the judgment will be reversed."

*Judgment of Appellate Court affirmed.*

Mr. JUSTICE CARTWRIGHT, having heard this case in the Appellate Court, took no part in its decision here.

Mr. JUSTICE WILKIN : I concur in the judgment of affirmance in this case, but not in all that is said in the foregoing opinion.

Mr. JUSTICE PHILLIPS, dissenting:

I cannot concur in the conclusion reached by the majority of the court nor with what is said in the opinion. By section 2 of the Road and Bridge. act it is declared: "The commissioners of highways shall have charge of the roads and bridges of their respective towns, and it shall be their duty to keep the same in repair and to improve them, so far as practicable," etc. Highway commissioners in charge of roads and bridges owing the duty to keep the same in repair, in the discharge of their duties engage in the performance of a ministerial duty, and are generally liable for negligent performance thereof, or for negligently failing to perform the same, to one to whom the duty is owing and upon whom they inflict a special injury. Definite duties prescribed by statute to be performed by a public officer, and arising from conditions existing, either admitted or proven, are such that nothing is left to discretion. (*State* v. *Johnson*, 4 Wall. 475; *Sullivan* v. *Shanklin*, 63 Cal. 247; *Grider* v. *Tulley*, 77 Ala. 422; *Pennington* v. *Streight*, 54 Ind. 376.) In *Fairchilds* v. *Keith*, 29 Ohio St. 156, it was held that the entering of judgment in proper form on the docket and issuing execution were ministerial acts, for whose non-performance a justice of the peace was liable to one injured by such neglect. In *Harlow* v. *Birger*, 30 Ill. 425, it was held, where it was the duty of a justice of the peace taking the acknowledgment of a chattel mortgage to enter the same on his docket, that his neglect to make such entry would give a right of action against him to one injured by reason of such neglect, because the act was purely ministerial. It was said by this court in *Tearney* v. *Smith*, 86 Ill. 391: "Commissioners of highways are only in a very limited sense judicial officers. Repairing a highway is not of that character. For the negligent performance of ministerial acts they are personally responsible if injury results to others."

The duty of keeping the highway and bridges in repair existing as a ministerial duty imposed by law, if the necessary funds to make such repairs are under the control of the commissioners or could be procured by using the official means at their command, and they negligently fail to repair, and there is knowledge of the existing defects, and by reason of such defects and negligence in failing to repair a person suffers special injury, then, in my opinion, the commissioners should be held liable individually for the damage. And I believe this view is sustained by the current of authorities—at least there is very strong authority in its support.

In *Adsit* v. *Brady,* 4 Hill, 630, it was said: "When an individual sustains an injury by the misfeasance or nonfeasance of a public officer, who acts or omits to act contrary to his duty, the law gives redress to the injured party by an action adapted to the nature of the case." To the same effect is *Wett* v. *Village of Brockport,* 16 N. Y. 168, and *Robinson* v. *Chamberlin,* 37 id. 389.

In *Hoover* v. *Barkhoof,* 44 N.Y. 113, it was held that it was the duty of the commissioners of highways to repair defective highways and bridges, after notice of their condition, with reasonable and ordinary care and diligence, if they have sufficient means in their hands or authority to procure such funds, and neglect of their duty renders them liable in a civil action to any person specially injured.

In *People ex rel.* v. *Board of Town Auditors,* 75 N. Y. 316, it was said: "The town, in its proper capacity, has no control over highways and is under no legal obligation to keep highways and bridges in repair, and hence no recovery can be had against the town for injury received by the negligence of its officers in failing to keep them in safe and secure condition. Commissioners of highways receive and disburse all moneys raised for highway purposes, and lay out, discontinue and control the same. They are also liable, individually, in a civil action, for

any wrong they may commit or any injury resulting from their neglect to repair a highway, if they have funds provided for such purpose, to any person who has sustained damage."

In *Huffman* v. *San Joaquin County*, 21 Cal. 425, it was held that a county was not liable to an individual for damages sustained in consequence of the want of repair to a bridge, as the statute placed the management and control of bridges upon the supervisors and overseers, who had the duty of keeping the same in repair, and that if a remedy exists it should be sought against them personally.

In 1 Jones' Law, (N. C.) 243, an overseer of a public road was held liable for special damage for injuries arising from the road being out of repair.

In *House* v. *Board of Commissioners*, 60 Ind. 580, the right to recover against the commissioners individually is recognized, although in that case the action was against the board of commissioners as a body politic and not corporate, but in the discussion it was said: "The board is a body politic and corporate, and as such may sue and be sued, and ample provision is made for the collection of judgments rendered against it. The obligation thus imposed upon the board to cause all bridges in the county to be kept in repair, with ample power to provide means to discharge the obligation, carries with it a corresponding right in every one having occasion, in the usual course of travel, to use the bridges, to have the obligation fulfilled and the bridges kept in repair. And it seems to us to follow, that where the board negligently suffers such bridge to be out of repair, whereby a person in the ordinary use of it is injured in person or property without his own fault, he must have an action against the board for the damages, otherwise there would be a wrong without a remedy. It will not do to say that the members of the board might be sued for the injury, in such case, in their individual capacity, and therefore that the corpo-

ration could not be sued. Without stopping to inquire, whether the members of the board would or would not be liable as individuals, it seems to us that a party thus injured should not be required to look for redress only to them as individuals,—they might be unable to respond in damages."

In *McCord* v. *High*, 24 Iowa, 336, an action was brought against a road supervisor by an abutting land owner. A certain stream crossed the road and flowed through the land. The supervisor diverted the course of the stream so that the same quantity of water did not flow through the former bed, and in an action against him for damages it was said: "He is also required to direct the work, to make the repairs he has determined upon. This is simply a ministerial duty. * * * The defendant in the case at bar saw fit to change the course of the stream by dispensing with a bridge which had before been used, and erecting an embankment and culvert. Whatever rights the public had acquired to cross the stream by user and by acquiescence of the plaintiff, were confined to the use of the bridge, or such other manner of crossing as would interfere in no greater degree with the rights of the plaintiff to the water than did the bridge. The act of thus changing the manner of crossing the stream was ministerial in its nature, and it was the defendant's absolute duty so to perform it that plaintiff should not be injured thereby. * * * The liability of the road supervisor for injuries sustained by another on account of the negligent and improper erection of a culvert over the stream of water was recognized in *Conwell* v. *Emrie*, 4 Ind. 209. * * * The powers of road supervisors are similar to those exercised by cities, through their officers and agents, in grading, paving and otherwise improving the streets,"—and in that case the supervisor was held individually liable. Judge DILLON, in a separate opinion in the same case, stated that he had much difficulty in reaching a conclusion, but inasmuch as an action could

not be maintained against the town nor against the county, he held a recovery should be allowed against the supervisor in his individual capacity, and laid down the rule thus: "That where a public officer, other than a judicial one, does an act directly invasive of the private rights of others, and there is otherwise no remedy for the injury, such officer is personally liable, without proof of malice and an intent to injure."

In *Perry* v. *Barnett*, 55 Ind. 522, the complaint was for obstructing a highway. The evidence was that the defendant built a bridge which was no obstruction, and that by reason of a defect therein the plaintiff was injured, and the court, in holding that a judgment could not be sustained against the defendant under the complaint, said that if the defendant failed to keep in repair or build properly so that the bridge would be reasonably safe, then, if liable at all, he was liable for a failure to discharge his official duty in that respect, but declined to pass upon the question of liability.

Other cases might be cited to sustain the view I am insisting upon, but in the brief time at my disposal a further examination of authorities may not be made.

Under the rule announced by the majority of the court disregard is had of the well known rule of law that a private remedy exists where damage is sustained by reason of an unlawful act. The commissioners of highways are vested with authority to levy taxes and keep in repair the roads and bridges of their respective towns. Under the law they are in charge of such roads and bridges, and they only determine as to the expenditure of the funds arising from taxation, and by the opinion of the majority, however negligent they may be, provided it is not an absolutely willful and malicious negligence, no recovery can be had for the non-performance or negligent performance of their duties. It seems to me this is against law and against reason.

There are some cases that hold the commissioners are not liable individually, but in an analysis of those cases it must be remembered that in the New England States the towns are held responsible for damages resulting specially to one by reason of the non-repair of the public highway, and, where the town is thus made responsible, on no reason or principle could the individual be held liable by the party injured, however it might be with reference to the right of the town against him.

Nor am I willing to recognize the authorities cited in the opinion of the majority of this court. *Bartlett* v. *Crozier*, 17 Johns. 438, was a case where an action against an overseer was brought, and it was said: "It appears from a careful examination of the several provisions of the act, that the commissioners, and not the overseers of highways, are the responsible persons in respect to the erection or repair of bridges. The overseers have nothing to do with bridges, but in the single instance in which they receive fines and commutation money, or other money, under the order of the commissioners. In every other part of the act the duty of repairing bridges and expending money for that purpose is expressly vested in the commissioners. The overseers were intended to be chiefly confined to the highways. They are to warn the people to work with their implements and teams on the highways. The construction and repair of bridges is a distinct business. * * * My conclusion from this analysis of the act is, that with respect to bridges at least, if not to highways, the commissioners, and not the overseers, are the persons properly responsible to the public." And it was held the statute was not well pleaded and a recovery would not lie against the overseer. In the subsequent cases in New York, as I have shown, the commissioners, as a body, are not held liable, but are liable individually. It seems to me the discussion in *Bartlett* v. *Crozier* is not an authority for holding the commissioners would not have been liable in-

dividually. The next two cases,—*McKanzie* v. *Chevin* and *Young* v. *Commissioners*,—do not, in principle, sustain the rule announced. The *Young case* was decided in 1820 and the *McKanzie case* in 1841. At the time of those decisions, under the legislation in South Carolina no provision was made by which the commissioners were authorized to levy a tax. They were without funds, depending solely on road labor, and where no means were provided by law to build or keep in repair the bridges, it is not strange that it should be held the commissioners would not be responsible in a private action for neglect of duty when there were no means to perform the duty. The next case of *Lynn* v. *Adams*, decided in 1850, has, as shown by the quotations above mentioned, if not reversed, been disregarded as authority in Indiana. *Dunlap* v. *Knapp*, decided in 1862, is in point and sustains the doctrine announced in the opinion, as does also *McConnell* v. *Dewey*, but I can not assent to the reasoning of those opinions.

The proposition in the opinion, that "the statute has provided means for redressing public wrong by a penalty, and that is sufficient to enforce the public duty," is no answer to the question as to what is the individual right. Here we have a statute defining and declaring a duty of a public officer, and the rule is announced that if that officer neglects his duty, and by reason of it an individual suffers a special injury, there is no remedy for the individual, for the reason that he may not have an action against the county, nor the town, nor the commissioners individually, for their wrongful neglect. It seems to me such a rule is not in accordance with the principles of common law, nor is it calculated to be beneficial to the progress and prosperity of the State of Illinois. The condition of the highways has much to do with the convenience and success of the people, and the principle announced in the opinion in this case seems to be a retrogression from the way of progress. To simply hold the commissioners of highways may be subject to a

fine for a failure to discharge their duty is not an answer to the proposition that an individual has suffered injury by their wrongful neglect and through their failure to discharge their duty has sustained damage, and is but slight satisfaction to the injured party without any compensation.

The proposition urged by the majority, that the defendants may be subjected to fine for refusing to accept the office of highway commissioners to which they were elected, (even if that act could be held constitutional if brought before this court,) should not relieve the commissioners from the liability for their negligent acts as officers, by which a person suffers a special injury. Neither is the reason assigned in the opinion of the court, that the compensation received by the commissioners for the discharge of their official duties is but little more than the wages of a laborer or servant, any reason why they should be relieved from liability for their negligent acts. The common observation of every individual is, that the citizens of the State of Illinois do not regard with very serious objection the imposition of official duties upon them, and as a rule are willing to accept office,—even that of commissioner of highways,— and strive to obtain it, as is shown by the records of this court in *Apple* v. *Barcroft*, 158 Ill. 649, where a contested election was brought to this court to determine the right to office of the commissioners of highways.

I believe where the commissioners have funds in their hands which may be used for the repair of highways, or means of procuring funds officially, and they negligently fail to use them for that purpose, they should be held individually liable for any injury resulting to one specially from such negligence, and hence I dissent from the opinion of the majority.

Mr. Justice Magruder: I concur in the opinion of Mr. Justice Phillips.