## W. A. Pearl, Appellee, v. Thad King et al., Appellants.

ROADS AND BRIDGES—*when commissioners not personally liable.*
Highway commissioners are not personally liable to one whose
horse was injured because of defects in the highway, on the ground
of wilful neglect of their duty to repair the road, where their funds
are expended, and one of their number, after notice of the defects,
in good faith repairs the road about a week before the accident
by placing poles, brush and dirt which are subsequently washed out,
in the mud hole where the accident occurred.

Appeal from the Circuit Court of Franklin county; the Hon.
JACOB R. CREIGHTON, Judge, presiding. Heard in this court at the
October term, 1912. Reversed. Opinion filed March 10, 1913.

THOMAS J. LAYMAN and WILLIAM B. JOHNSON, for
appellants.

W. H. HART and MOONEYHAM & SEEBER, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the
court.

On May 31, 1912, appellee, while proceeding along a
public highway, crossing what are known as the Big
Muddy bottoms in Barren township in Franklin
county, Illinois, drove into a mud hole, from which his
horse had great difficulty in extricating itself. About
two weeks later, the horse died and appellee after-
wards brought suit before a police magistrate of said
county against appellants, who were commissioners of
highways of said township, to recover the value of his
horse. He claimed that the death of the horse resulted
from injuries received in getting out of the mud hole
and that appellants were liable for its value by reason
of their wilful neglect of duty in not repairing the road
at that place. There was a jury trial before the jus-
tice of the peace and also in the Circuit Court, to which
appeal was afterwards taken and in both instances,
the verdict of the jury and the judgment which fol-
lowed, were in favor of appellee.

There appears from the record to have been no controversy as to the facts in the case and the question presented is whether these facts established such a case as entitled appellee to a recovery against appellants who were sued as individuals and not as commissioners. In the north part of said township, as it appeared from the proofs, there was a low marshy tract of land, called Big Muddy bottoms. Across these bottoms and the Big Muddy River, which gave its name to the vicinity, was a public highway running east and west, of which appellants, as highway commissioners, had charge. In times of high water, this road was often overflowed by the waters of the river and was hard to keep in repair. The spring of 1912 was very wet and the use of the road at that time caused three or more mud holes to be formed, which interfered with travel. The commissioners were notified by the postal authorities, that the mud holes must be fixed, because the road was being used as a mail route. Two days after the notice was received, on May 25, 1912, appellant King undertook the work of repairing the road across the bottoms. Two of the mud holes were in a measure bridged with planks, but when the one in question was reached, the planks had been all used and the commissioner and the overseer working with him, did not know where they could get any more, so they laid poles in it, cut some fine brush, piled it in on top and then covered all with dirt, leaving it in a fair condition for travel. A day or two later however, a very heavy rain came washing the dirt through the brush and partly destroying the effect of the work which had been done. During the week following the making of the repairs, King visited the place and found the bottoms under water. By May 31, when appellee drove his horse into the mud hole, it had again gotten into a bad condition.

It is contended by appellee, that at the time of the accident and prior thereto, the defendants, as commis-

sioners, had sufficient funds in their hands to make the necessary repairs to the highway in question and that they wilfully refused to do so, although they were advised of its condition; that the repairing attempted by them was done in such a way as to make the crossing dangerous to the public. The briefs and arguments on both sides of the case are largely devoted to the question, whether or not the commissioners of highways may be made personally liable for injuries caused by a wilful failure on their part to perform their duties in repairing a defective highway, where there is money in their hands belonging to the proper fund which can be used for that purpose. This question does not appear to have been entirely settled in this state, but whatever the rule may be, it is not essential to discuss it here for the reason that the facts in the case do not warrant a recovery.

Henry Roberts, one of the commissioners and treasurer of the board, testified that the amount received by him from May 7 to May 31, 1912, together with what he already had on hand, made a total of $2,354.38 for the township road and bridge fund; that some 75 per cent. of this amount was received in orders, and that there were orders outstanding so that all the funds of the district were in this manner already disposed of. Notwithstanding the condition of the funds, however, the commissioner King proceeded to remedy the defects in the road almost immediately after he was notified to do so, with such means as he had at hand, in the manner which appeared to him to be best.

In Nagle v. Wakey, 161 Ill. 387, it is said: "Even if it is proper to call the act of repairing a highway or bridge ministerial, it is a duty which unquestionably involves the exercise of judgment and discretion as to time, method and means, and is readily distinguishable from such ministerial duty as merely involves the following of specific directions and instructions." But counsel for appellee, while admitting that commissioners under such circumstances, must exercise their best

judgment, say that they should not be permitted to act at their pleasure and that the conduct of the commissioners in this case was in accordance with their pleasure rather than with their best judgment. The commissioner who made the repairs, stated that he did so in good faith with the intention of placing the road in condition to be used for traffic and there is nothing in the proofs which would appear to question his good faith. It is true that while the facts in the case are not disputed, conflicting opinions were expressed by witnesses as to whether the commissioners had used the best means available for making the repairs. In this connection it was also shown that after the accident in question occurred, the road was repaired in the same way that the commissioner attempted to fix the mud hole in question, and was then in good condition.

In Nagle v. Wakey, *supra,* it is further said, "we do not think that the commissioners, who in good faith and to the best of their ability have expended the means at their command where they seemed to them most needed, can be called upon to justify their judgment to the satisfaction of a jury at the peril of their savings."

If in a suit brought against them for damages, occasioned by a wilful failure on their part to perform their duties, highway commissioners must sustain their judgment as to the best means of repairing a road by the weight of the evidence, few if any men possessed of any property, would be willing to imperil it by voluntarily accepting the office of commissioner with its attendant hazards.

We find as facts in this case that the defendants, through one of their number, attempted in good faith to repair the road in question, in accordance with their duties as commissioners of highways and that there is no evidence tending to show any wilful violation of such duty. The judgment of the court below will accordingly be reversed.        *Reversed.*