Thompson v. Hughes, 210 Ill. App. 462.

Joseph E. Thompson, Administrator, Appellant, v. Lawrence P. Hughes et al., Appellees.

Gen. No. 6,516.

1. DRAINAGE, § 48*—*when drain commissioners not liable to owner of land for damages because tile is insufficient.* Under section 46 of the Farm Drainage Act' (J. & A. ¶ 4523), providing that commissioners failing to perform any of the duties imposed upon them by the act shall individually be liable to a fine of $100 and also be liable to the person injured by such neglect of duty for all damages resulting, commissioners are not liable to the owner of land for damages to crops because the tile is not large enough to carry off the water in wet seasons, in the absence of a showing that they failed to honestly exercise their best judgment in the discharge of their official duties.

2. DRAINAGE, § 87*—*what is right of property owner as to having land adequately drained during wet season.* While every landowner in a farm drainage district is entitled to drainage that he pays for, it does not follow that every landowner assessed for benefits in the district is, as a matter of course, entitled to have every acre of his land so thoroughly drained that there is no danger of destruction of a crop in an unusually wet season.

Appeal from the County Court of La Salle county; the Hon. HENRY MAYO, Judge, presiding. Heard in this court at the October term, 1917. Affirmed. Opinion filed April 9, 1918.

BROWNE & WILEY and BUTTERS & CLARK, for appellant.

R. D. MILLS and H. M. KELLY, for appellees.

MR. PRESIDING JUSTICE CARNES delivered the opinion of the court.

This is an appeal from a judgment for the defendants in an action on the case brought by the administrator of a landowner in a farm drainage district against the commissioners for damages as provided in

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

section 46 (J. & A. ¶ 4523) for an alleged failure to perform the duties imposed by our Farm Drainage Act.

Barto Thompson, in his lifetime, owned 100 acres of farm land within which was a tract of about 16 acres used as a slough pasture, and within that tract a pond from surface drainage covering 4 or 5 acres. The drainage district of about 4,000 acres was organized in 1908, and included this 100 acres. In 1909 an open ditch was constructed and in the winter of 1910 and 1911 a tile drain extended by the district as a branch for the purpose of draining said pond. The total cost of the combined drainage was about $39,000. Thompson was assessed $1,300 and paid his assessment. Meantime, March 1, 1909, he had leased 160 acres, including this tract, to one Ryg for a period of 5 years expiring March 1, 1914. In 1911 the tenant, Ryg, broke up this low land and raised a good crop of corn thereon. In the spring of 1912 he plowed the land and planted another crop of corn. About the middle of June there was an unusually heavy rainfall, the tile proved insufficient to take care of the water gathered in this natural depression, and the corn on about 4 acres was destroyed, and on 2 more acres injured. July 8, 1912, Thompson served notice in writing on the drainage commissioners charging insufficiency of the drain and asking that the same be remedied. The tenant planted the land in millet, and another heavy rain came in August and drowned out and destroyed that crop.

Barto Thompson died August 8, 1913. This suit was commenced December 17, 1914, by his administrator, the appellant, against Lawrence Hughes, Frank Rawling and Daniel McCarthy, the commissioners. The declaration charged that the defendants were commissioners of said district from and after March 9, 1912; that by reason of the construction of the ditches and drains said lands did not receive adequate drainage, and they neglected and refused to furnish said

lands with adequate drainage, and because of such negligence plaintiff's intestate lost the use of said lands during the years 1912 and 1913.

The evidence showed the loss of crops in the year 1912, as before stated; that in the year 1911 there was a good crop of corn raised, and in the years 1913 and 1914 there was little damage from water. It also showed that the rainfall in July and August, 1912, was exceptional and not to be expected in ordinary years. There was a conflict in the testimony as to the necessity and practicability of improving the drain, and how it could be done. One of appellant's expert witnesses testified that the trouble could be remedied in two different ways, either one of which he spoke of as practicable, and stated the cost of one method would be approximately $7,500.

Appellees' claim is that appellant has no right of action because the land was rented and it was the tenant's crop and not the landlord's that was injured; that the damage in question was caused by unusual conditions not likely to again occur, and that it therefore was not practical or necessary to spend large sums of money on improving the drain; that the trouble arose from want of lateral drains that should have been furnished by the landowner and not from insufficiency of the main drain that had been constructed by the drainage district; that the main drain (tile) was placed at the time of the construction at a level requested by Barto Thompson, and therefore his representative is estopped from complaining of any damage arising from a defect in that level; and that the commissioners as public officers are in no event liable unless the evidence shows they were guilty of an intentional failure or neglect of duty. The court instructed the jury at the instance of appellant that if they believed from the evidence that a feasible and proper plan might reasonably have been adopted to afford adequate drainage and that the commissioners

failed and refused to adopt such plan and change, alter or repair the drains after they had knowledge of the necessity therefor, then they were liable. And at the instance of appellees, if they believed from the evidence that the defect complained of was occasioned by an improper grade that had been established at the request of plaintiff's intestate, then the plaintiff is estopped from recovering damages occasioned by such improper grade. The verdict for the defendants may have been on either ground. The questions of law and fact involved in the contentions of the parties so far indicated require much investigation and discussion, as well as questions on the admission of testimony, and the giving and refusing of instructions strongly urged by appellant as error, if under the uncontroverted facts a judgment against the appellees could be permitted to stand.

The first inquiry is whether appellees in accepting the office of drainage commissioners undertook to do more than fairly and honestly exercise their judgment and discretion; whether they became liable to fines and penalties if, in the honest exercise of their judgment and discretion, they performed or failed to perform acts in the discharge of their duties not in accordance with the judgment of some tribunal legally authorized to determine the propriety of their conduct.

Section 41 of the Farm Drainage Act (J. & A. ¶ 4518) imposes a duty upon commissioners to repair errors in constructing drains and carry out the original purpose so that all the lands as far as practicable shall receive their proper and equal benefits as contemplated when the lands were classified. They may use the funds of the district or make an assessment to raise money for such purpose; that they are charged with a duty under this statute to provide proper drainage is clear from the decision in *Peotone & M. Union Drain. Dist. No. 1 v. Adams,* 163 Ill. 428; *Langan v.*

*Milk's Grove Spec. Drain. Dist. No. 1,* 239 Ill. 430. And they may be compelled by mandamus to levy assessments to make repairs, and are liable to penalties for failure to perform their duties. *Cleary v. Hoobler,* 207 Ill. 97. Section 46 (J. & A. ¶ 4523), under which this suit is brought, provides that commissioners failing to perform any of the duties imposed upon them by the act shall individually be liable to a fine not exceeding $100, and also liable to the person injured by such neglect of duty for all damages resulting. The question still remains whether commissioners are liable to penalties under that section if they have failed to exercise the judgment and discretion of ideal competent men, or are to be excused if they have exercised honestly such judgment and discretion as they are gifted with. In private contracts and undertakings of a personal nature like those of lawyers with their clients, and doctors with their patients, it is no answer in a suit for malpractice that the defendant did the best he could. He must measure up to some standard of proficiency that a court and jury may erect. But we do not think that is true of public officers, of this class. In *Binder v. Langhorst,* 234 Ill. 583, it is held that commissioners are liable in damages to an owner of assessed land for neglect of their duties, but that their duty is to be measured like that of highway commissioners, and they are only required to exercise in good faith to the best of their ability their judgment, and use the means which the law provides for carrying on the work, and are not liable for an injury occurring without any intentional neglect of duty on their part. The court cites *Nagle v. Wakey,* 161 Ill. 387. That case was heard on appeal from this court (59 Ill. App. 198) and the opinion of this court by Mr. Justice Cartwright was adopted. It is there said: "It would be against reason to elect commissioners to use their best judgment and then sue them for doing it." It was said in *Pearl v. King,* 179

Ill. App. 562, if highway commissioners must sustain their judgment as to the best means of repairing a road by the weight of the evidence, few, if any, men possessed of any property would be willing to imperil it by voluntarily accepting the office of commissioner with its attendant hazards. There is some conflict of authority outside of this State, but the law is here well settled. (*Scovill v. Lange,* 204 Ill. App. 82, and authorities there cited.) We conclude that appellees were not liable in this action in the absence of any showing that they failed to honestly exercise their best judgment in the discharge of the official duties in question. We find nothing in the evidence indicating any such failure. There is no serious damage complained of except in the year 1912. The first flood of that year occurred before they had any sufficient notice or knowledge of danger to require them to act. The second flood occurred before there was sufficient time to remedy the difficulty even if they had actively undertaken to do so. Whether the lands were or not receiving the benefits contemplated at the time of the assessment is at least a fair question for dispute and difference of opinion, as also whether the remedy could not be obtained by such individual acts of the landowner in laying lateral drains as are required of most landowners in such districts. There is no guaranty in a farm drainage district under ordinary conditions that every acre of land shall be rendered fit for cultivation every year. That is an ideal condition, and in farming the ideal is rarely attained. It is a matter of common observation that in exceptional seasons some low places in cornfields in well-drained lands will drown out because the tile will not take the accumulating water rapidly enough to relieve the crop. While every landowner is entitled to drainage that he pays for, it does not follow that every landowner assessed for benefits in a farm drainage district is as a matter of course entitled to have every acre of his

land so thoroughly drained that there is no danger of destruction of a corn crop in an exceptionally wet season. Land only fit for a slough pasture is greatly benefited and enhanced in market value if it is by drainage rendered fit for cultivation in ordinary years, even though in exceptional years a corn crop might be destroyed on one-quarter of the tract. The commissioners should, so far as practicable, construct and maintain a drain so that the lands within their district shall receive their proper and equal benefits as contemplated when the lands were classified. This is the duty prescribed by the statute under which they act, but that does not mean that every acre of land must be perfectly drained. If, in some supposable instance, the commissioners under the law are charged with a duty to expend for the benefit of a landowner a great deal more of the district's money than the market value of the land after it is improved, still three competent and capable farmers, such as are ordinarily chosen to fill that office, should not be subjected to fines and penalties because they fail to comprehend that duty and act in that manner. It is not necessary to determine whether in this case a mandamus might properly issue to compel action on the part of the commissioners to relieve the difficulty in question. If it were conceded that on the evidence in this case relief would have been so compelled if that had been the form of the action, still it by no means follows that appellees were liable for mistaking a duty that a court on a full hearing of expert and other testimony might compel them to perform.

We are of the opinion that under the evidence in this case, read most favorably to appellant, no right of recovery in this action is shown, therefore the judgment is affirmed.

*Affirmed.*