(No. 75-CC-0746—)

JEAN ROSENBAUM, Claimant, *v.* THE STATE OF ILLINOIS, Respondent

*Opinion filed May 12, 1975.*

*Order allowing motion to dismiss filed September 17, 1980.*

*Order on denial of motion to transfer filed December 15, 1980.*

JEAN ROSENBAUM, *pro se*, for Claimant.

HOLDERMAN, J.

Claimant filed her Complaint alleging that she suffered damages as the result of occurrences in the Domestic Relations Court, Juvenile Court and Chancery, and Divorce Court, all in Chicago, Illinois, and all a part of the Court system of the State of Illinois and for which the State is responsible.

The Complaint alleges that in 1969, as a result of domestic difficulties, Claimant went to Domestic Relations Court in an attempt to pursue her legislative right of support in accordance with her husband's station-of-life, as a wife, and mother of minor children, as she did not want a divorce or separate maintenance.

Claimant alleges that various Assistant State's Attorneys, on different occasions, refused to give her a Complaint to sign, stating that this was a Court for absolutely destitute wives only and verbally ordered her to go to work even though she had minor children.

Claimant further alleges that her husband had been in a condition of near-nervous breakdown for several years due to Urban Renewal and relocation in his business neighborhood, that he had left his wife and family, and had been behaving erratically for a long period of time.

She further states that she was shown Ill. Rev. Stat. 1969, ch. 68, par. 24, entitled "Neglect to Provide for Destitute Wife or Children," as justification for the policy of the State's Attorneys office.

Claimant further alleges that when she suggested that perhaps a private attorney could aid her, she was told if she could afford an attorney, she was not destitute

enough to qualify for entry into Domestic Relations Court.

She further states that after she spent a great deal of time, to the neglect of her home and family, she finally did secure a Complaint to sign, at which time she attempted to strike the word "destitute" from the Complaint, but was not allowed to do so by her Court advisor who stated "it was only a formality and would not make any difference."

She further alleges that the Court finally ordered her husband to pay her $25.00 weekly for approximately one year, and refused to renew the award at the end of that time, and also that the Court ordered her to "get a divorce or file for separate maintenance."

Claimant further states that in January 1973, the Legislative Reference Bureau in Springfield, Illinois discovered the word "destitute" in the Complaint at Domestic Relations Court was totally illegal. She alleges that for 22 years, the Domestic Relations Court had forced middle-class women into divorce or legal separation illegally.

She further complains that the Juvenile Court of Chicago, Illinois, and particularly Judge David Schaffer, had acted erroneously in some decisions and she further alleges that Judge Schaffer was found hung by the neck, an apparent suicide, and that she was eventually informed that the Judge had been under psychiatric treatment for a long time and that, due to his emotional condition, he was not capable of carrying on his responsibilities as a Judge.

Claimant, at great length, further alleges other acts of the Court, to her detriment. She bases her claim upon Section 12 of the new 1970 Constitution of the State of Illinois, which is as follows:

*"RIGHT TO REMEDY AND JUSTICE.* Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely and promptly."

This Complaint is perhaps but a logical extension of the decision in the *Molitor* case and one which was foreseen by Judge Davis at the time the decision was rendered in that case. In his dissenting Opinion, he made the following statements:

"This decision cannot but be the occasion for releasing a flood of litigation and legislation in order to establish new boundaries in this area of novel liability. During this period, school districts will be harassed by doubts and difficulties which will impair their ability to conduct an efficient system of free schools.

(Tort) liability should not be imposed upon the State or its governmental agencies without exploring and considering the complicated aspects of its impact, and without authorizing a tax levy and providing a tax rate for such purpose."

Respondent filed a Motion to Dismiss citing the fact that "all of said alleged acts were judicial in nature and hence privileged from liability."

There are two cases that seem to deal with the situation at hand.

The case of *James Lusietto, Administrator of the Estate of Shirley Lusietto, Deceased v. James Kingan* (1969), 107 Ill. App. 2d 239, 246 N.E.2d 24 in which suit was brought by the administrator of the estate of the deceased against a State Highway Supervisor, alleged that the deceased met her death by reason of the failure of the supervisor of highways to have the road in proper condition, causing the fatal accident. The Court, in passing upon this case, laid down the rule that before recovery can be made when suit is brought against a State Employee in his official capacity, it must be shown there was a violation of some duty owed to an individual and unless such violation was shown, it cannot give rise to legal liability of an individual employee. The Court, in

citing the case of *Nagle v. Wakey*, 161 Ill. 387, 393, 43 N.E. 1079, recognized the distinction between the duty which a Commissioner of Highways owes to an individual and that which he owes to the public in general, holding that for a violation of the former he may be sued by an individual but not so for a violation of a duty he owes to the public in general.

The distinction seems to arise as to whether the matter was ministerial or whether it was one that required the exercise of discretion and judgment. It is a well established principle of the common law that an immunity exists in favor of public officials when they are exercising their official discretion on matters which are discretionary in nature and not ministerial. *People for Use of Munson v. Bartels*, 138 Ill. 322, 27 N.E. 1091; *McCormick v. Burt*, 95 Ill. 263; *Gilbert v. Bone*, 64 Ill. 518; *Kelly v. Ogilvie*, 64 Ill. App. 2d 144, 212 N.E.2d 279. Quite apart from the doctrine of governmental immunity, the case law in this State has developed the doctrine of public officials immunity. This doctrine is distinguished from and founded on a different rationale from the principle of governmental immunity. See note 1966 Illinois Law Forum 981 at 995.

In the present case, the actions of the various Judges were discretionary and not strictly ministerial.

It is the law of this State that the principle of public officials immunity still exists. This was decided in the case of *Kelly v. Ogilvie*, 64 Ill. App. 2d 144, 212 N.E.2d 279. This case was decided almost six years after the *Molitor* case and the Court recognized that the principle of public officials immunity still existed and stated:

"This doctrine rests on the principle that the public decision maker, like the judge, ought to be shielded from personal liability or other factors extraneous to a judgment based on his best perception of public needs."

It appears, therefore, that the doctrine of public

immunity still exists as to acts of individuals where they have discretionary and ministerial duties to perform.

Respondent's Motion to Dismiss is hereby granted and said cause is dismissed.

## ORDER ALLOWING MOTION TO DISMISS

HOLDERMAN, J.

The original Complaint was filed January 8, 1975, and claimed mental, emotional, financial and physical injury over a period of years due to gross negligence and administration of the Courts of Illinois and their related departments. She claimed her children likewise "have been sorely affected" by the negligence of the State.

The claim was based on alleged "occurrences in the Domestic Relations Court, Juvenile Court and Chancery, Divorce Court, all in Chicago, Illinois." The so-called occurrences commenced in 1969 in the Domestic Relations Court where she sought her right of support (not a divorce). The legal sources she consulted with showed her Ill. Rev. Stat., ch. 68, par. 24, entitled "Neglect to Provide for Destitute Wife or Children" and based thereon, she claims she did not qualify as a "destitute" wife. She did get legal relief for a time but this terminated when she was told that Domestic Relations Court was for the destitute only.

In January 1973, it was discovered that the word "destitute" was illegal and in 1951 was removed by the legislature, but through inadvertence the word continued to appear in the title of the Statute. Claimant alleges this was gross negligence on the part of the Domestic Relations Court to resort to destitute cases when the word was removed from the title but inadvertently printed in by the printer.

Respondent filed a motion to dismiss on February 4, 1975, based primarily on the theory that the alleged acts complained of were privileged from liability by the Courts of Illinois. On May 12, 1975, we allowed the Respondent's Motion to Dismiss stating therein that "It is a well established principle of the common law that an immunity exists in favor of public officials when they are exercising their official discretion on matters which are discretionary in nature and not ministerial." (Citations given.)

Thereafter Claimant stated that it had requested a general continuance until a final hearing was adjudicated in a case pending before the Appellate Court. Thereafter a motion was filed by Claimant to vacate the previous order of dismissal which motion was objected to by the State on the grounds that the alleged acts complained of were judicial in nature and immune from liability.

On June 14, 1976, we continued the case for 15 days after disposition of the case in the Appellate Court of Illinois. We later, on August 19, 1976, continued this case until the Supreme Court passed on the pending litigation.

This case was dismissed again by this Court on September 7, 1978, and complainant now asks us to set this aside.

We have dismissed this suit twice on motion. Claimant feels aggrieved that the dismissal was without a hearing. No hearing on a motion to dismiss is an absolute right.

It may well be that Claimant feels she has not received adequate treatment of her complaint but our view of the file fails to find any basis where this Court has jurisdiction to alleviate her alleged mistreatment in processing her grievance. There were no citations to support such a contention, the occurrences were of a

nature as to be barred by the Statutes of Limitations, the theory of immunity dilutes her. claim, allegations of damages were loose and mostly without recognition in law.

This case is dismissed on motion of Respondent.

## ORDER ON DENIAL OF MOTION TO TRANSFER

ROE, C. J.

This cause coming on to be heard on a notice of appeal, a request that additional facts and issues be allowed into the record for purposes of appeal, a motion to transfer case to the Circuit Court of Cook County, all filed by Claimant, objections to the motion to transfer which were filed by Respondent, Claimant's reply thereto, and Respondent's motion to strike Claimant's reply; it appearing that due notice has been given; and the Court being fully advised.

As was well pointed out in Respondent's objections, the Court of Claims is wholly lacking of authority to grant any of the various prayers for relief requested by Claimant.

It is hereby ordered that this matter be, and hereby is, closed.