## Charles Huffstuttler, Appellee, v. William Crabtree, Frank Johnson and Isaac Johnson, Appellants.

1. ROADS AND BRIDGES, § 220*—*when evidence insufficient to establish wilful negligence of commissioner of highways in failing to repair road.* Evidence which does not satisfactorily show that the attention of commissioners of highways has been called to defects in roads under their supervision and care will not warrant a finding of wilful negligence of. duty in failing to make repairs thereon.

2. ROADS AND BRIDGES, § 220*—*when commissioner of highways not liable for defects in highway.* Commissioners of highways are not liable in damages for mere neglect to repair the roads in their town.

Appeal from the Circuit Court of Hamilton county; the Hon. JACOB R. CREIGHTON, Judge, presiding. Heard in this court at the March term, 1915. . Reversed with finding of fact. Opinion filed December 1, 1915.

ISAAC H. WEBB and HARRY ANDERSON, for appellants.

J. H. LANE and THOMAS H. CREIGHTON, for appellee.

MR. JUSTICE McBRIDE delivered the opinion of the court.

This action was commenced before a justice of the peace, appealed to the Circuit Court of Hamilton County, where a trial was had and judgment rendered against the defendants for one hundred and fifty dollars and costs of suit, to reverse which judgment the defendants prosecute this appeal.

It appears from the evidence that the appellants were Commissioners of Highways of the Town of Flannigan in Hamilton County. That there was a public road extending nearly . east and west through said town and is described by the witnesses as a road passing by the residence of one William B. Johnson. On

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

this road and near the residence of said Johnson was a culvert of the length of about twelve feet and of the width of about four feet. There was a plank broken out on the south end of the length of about four feet or five feet, and the north end of about two and one-half or three feet. Some of the witnesses described the plank broken on the north end as having the appearance of being bent down by an engine or some heavy vehicle crossing it, but not entirely broke in two, while others say it was entirely broken off.

It appears from the evidence that on October 15, 1912, appellee with his family was driving a two horse vehicle across this culvert and one of the horses stepped into the hole of the north end of the culvert, fell and broke his leg from which injury he afterwards died. It further appears from the evidence of a portion of the witnesses that the hole had been there for some two or three weeks, while other witnesses testify to having passed over the bridge a short while before the injury without observing this hole. There was also a mud hole about one hundred yards east of this bridge and some abutments out of repair on a bridge about one-fourth of a mile west of the culvert. The commissioners had divided the work of the town and the part on which this culvert was located was allotted to the defendant Crabtree, who lived about one mile and a half from the culvert, the other commissioners living still further away. About one month previous to the accident Gus Matheny, a mail carrier, testified that in a conversation with appellant Crabtree he asked him if he could not fix these bridges and mud holes in shape so that they could be traveled upon, and says that at that time they were standing about fifty yards from this culvert and that Crabtree said he would have them fixed and thereafter and on about the 20th of September sent the overseer of the highways, who fixed the approach to the bridge and the mud hole but did not fix this culvert. Crabtree says that in the conversation

with Matheny his attention was called to the mud hole and he was asked to fix it but denies that his attention was called to this culvert, and Matheny says that he does not remember whether he called his particular attention to the culvert or not. William Die, the overseer who fixed the mud hole and repaired the approach to the bridge, says that he noticed that a plank was broken out of the south end of this bridge but did not notice anything wrong with the north end; that he had no plank wherewith to repair the south end and never informed Crabtree of the defective condition of the culvert. It further appears from the evidence that after the accident Crabtree directed the overseer to get some lumber and repair the culvert, which he did.

During the argument of this case counsel referred to and cited authorities upon the question of liability of commissioners of highways for a wilful failure to repair the highways in their town. We do not regard it as necessary to determine, and do not decide, as to whether or not a wilful failure upon the part of the commissioners would create a liability or not, as we are of the opinion that the facts in this case do not warrant a finding of wilful failure to discharge the duties of the office. It does not appear from the evidence that any of the appellants had knowledge of the condition of this specific culvert, and no witness testifies that their attention was called to it, while the witness Matheny says he called Crabtree's attention to the fact that the roads and bridges in that neighborhood needed repairing, yet he says he does not know whether he called his attention to this bridge or not but Crabtree says he did not call his attention to this bridge; and it further appears that within a short time after Matheny spoke to Crabtree about the condition of the roads that Crabtree sent the overseer to repair them and the overseer says that he made the repairs, except that he put no plank on the south end of this culvert because he had none, but never advised Crabtree

of the condition of the culvert, and there is certainly no claim that the other appellants had any knowledge of the condition of this road. We cannot say and do not believe that this testimony discloses a deliberate purpose upon the part of the appellants not to discharge the duties required of them. "The true conception of wilful negligence involves a deliberate purpose not to discharge some duty, necessary to the safety of the person or property of another, which duty the person owing it has assumed by contract, or which is imposed upon the person by operation of law. * * *

"Outside of statutes which exist in one or two States, denouncing wilful negligence, some of the cases lay down the doctrine that an entire absence of care for the life, the person or the property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal wilfulness, such as charges the person whose duty it was to exercise care, with the consequences of a wilful injury." Sections 20-22, vol. 1, Thompson on Negligence.

In view of the evidence as disclosed by the record in this case, we are of the opinion that no such state of facts is shown as warrant a finding of wilful negligence of duty, and the case will be considered and decided upon the question as to whether or not commissioners of highways are liable for mere neglect to repair the roads in their town.

It is strenuously insisted by counsel for appellee that for highway commissioners who have ample means at their command to neglect to repair the roads and to permit their roads to remain in such a condition as to be unsafe to travel upon is unjust to persons who may have occasion to use such highways, and while there may be much force in the argument presented, yet we are of the opinion that it is not an open question in our courts. It has been held by the highest courts of this State that while towns have power to levy taxes,

"they are not liable, in a common law action, for damages sustained by an individual on account of such action being neglected or inadequately performed. * * * The reasons always given for exempting towns from such actions are, that they are established as local subdivisions and agencies of the State for governmental purposes, and that duties are imposed upon them without their assent, exclusively for public purposes. The same reasons apply, with at least equal force, to commissioners of highways as an agency through which a town performs a public duty. * * * If he should neglect to perform any of the duties enjoined upon him while acting, the public injury renders him liable to a penalty of not less than ten dollars nor more than fifty dollars. The office and its duties are compulsory, and are imposed upon the individual for public purposes, in like manner as upon the town. The court draws a distinction between the town and the municipal corporation proper, on the question of liability, in favor of the town, and it would seem most unjust to reverse the rule as to the town officer and hold him to the same responsibility as a city or other municipal corporation. * * * The statute has provided means for redressing the public wrong by a penalty, and that is sufficient to enforce the public duty. * * * The decision in *Bartlett v. Crozier, supra* (17 Johns. 439), that an action would not lie against an overseer of highways at the suit of an individual for an injury which he had sustained in consequence of the neglect of the overseer to keep a bridge in repair, was quoted approvingly in *Hollenbeck v. Winnebago County*, 95 Ill. 148, and later decisions in New York of a different character were ignored. Being of the opinion that plaintiff had no right of action, the judgment will be reversed." *Nagle v. Wakey,* 161 Ill. 387. We think the dissenting opinion filed in the cause last above cited delineates and emphasizes the fact that the Supreme Court in that case intended to exempt com-

missioners of highways from liability for damages for neglect to repair.

Again, in the case of *Kennedy v. McGovern,* 246 Ill. 497, holds that the amendment of 1907 to section 51, of the Roads and Bridges Act (J. & A. ¶ 9810), which makes highway commissioners in counties not under township organization, personally liable for injury to person or property due to their failure or neglect to keep the highways of their district in repair is invalid as special legislation, there being no reasonable ground for making commissioners liable in counties not under township organization, and not making commissioners under township organization liable under the same conditions. We think that the court in its argument in that case necessarily reached the conclusion that commissioners of highways of towns in counties under township organization were not liable in damages for failure or neglect to keep the roads and bridges in good repair. It is there said: "The commissioners in both classes of counties have the same general responsibilities, and no liability for injury because of neglect to keep the highways in repair should be imposed upon one class that is not imposed upon the other. In a county not under township organization persons injured on the highway might, under this amendment, recover damages for such injuries from the commissioners of highways, when under exactly similar circumstances persons injured on this same highway but just across the county line, in a county under township organization, could not recover." *Kennedy v. McGovern, supra.*

It appears to us from a consideration of the cases that the Supreme Court of this State has reached the conclusion that a commissioner of highways is not liable in damages for mere neglect to repair the roads in his town, and we do not believe that the appellants, under the law, are liable to appellee for the damages

sustained, and the judgment of the lower court is reversed.

*Judgment reversed with finding of fact.*

Finding of fact. The court finds as a fact that the defendants were not guilty of wilful negligence.