(No. 25963.—
VIOLET DEAMUDE LEWIS, Appellant, *vs.* JOHN P. DEAMUDE
*et al.* Appellees.

*Opinion filed February 18, 1941—Rehearing denied April 8, 1941.*

CHARLES M. CRAYTON, and STEELY, STEELY, GRAHAM & DYSERT, for appellant.

ACTON, ACTON, BALDWIN & BOOKWALTER, (W. M. ACTON, and H. H. ACTON, of counsel,) for appellees.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Appellant, Violet Deamude Lewis, brought suit in the circuit court of Vermilion county to set aside the will of Eva Deamude alleging lack of mental capacity and undue influence. At the close of the plaintiff's evidence, upon motion by appellees, the court directed a verdict finding the instrument and codicil thereto to be the last will and testament of the said Eva Deamude, and entered a decree accordingly. The will disposed of both personal property and real estate and a freehold is involved.

Eva Deamude executed the writing purporting to be her last will and testament on July 23, 1925, and the codicil thereto dated July 19, 1928, reaffirmed in all respects the will of July 23, 1925, with the exception that two gifts of $100 were made to nephews not mentioned in the original will. The testatrix died on December 9, 1938, leaving as her only heirs-at-law John P. Deamude, Richard Deamude, William Deamude, her brothers, Marie Farrar and the plaintiff, Violet Deamude Lewis, sisters. Both the will and codicil were duly probated. The will, after providing that all debts and funeral expenses should be paid, made a gift of $100 to the son of the plaintiff, a gift of $200 to a church, and the balance of the estate to John P. Deamude, a brother, with the proviso that if he predeceased the testatrix then the property should go to the children of her sister Marie Farrar. The change made by the codicil did

not affect the general plan of disposition. The issues raised by the complaint are lack of testamentary capacity, and that John P. Deamude had obtained the execution of the will through undue influence and misrepresentation.

The errors claimed are that the contestants were unduly restricted in making proof of lack of testamentary capacity, in not allowing them to prove conduct and conversations with the testatrix at all times before and after July, 1925, and that there was sufficient evidence in the record to make it error for the court to direct a verdict in favor of the validity of the will.

All of the witnesses tendered by contestant were non-expert witnesses. In such case the rule is well settled that before a non-expert may give his opinion as to testamentary capacity, he must first testify to sufficient facts and circumstances to indicate his opinion is not a guess, suspicion or speculation. It must appear that such witnesses have an acquaintance with the person whose competency is in question, and until they have related facts and circumstances which afford reasonable ground for determining the soundness or unsoundness of mind of the person whose mental capacity is questioned, their opinions are of no value, and should be excluded. (*Ginsberg* v. *Ginsberg,* 361 Ill. 499; *Lloyd* v. *Rush,* 273 id. 489; *Britt* v. *Darnell,* 315 id. 385; *Brainard* v. *Brainard,* 259 id. 613; *Baddeley* v. *Watkins,* 293 id. 394.) Proof of the mental condition for a reasonable time before or after making such will can be received only when it will tend to show such condition at the time of the execution of the will. (*Todd* v. *Todd,* 221 Ill. 410; *Chandler* v. *Fisher,* 290 id. 440; *Eschmann* v. *Cawi,* 357 id. 379.) In proceedings to contest the validity of a will, testament, or codicil the contestant shall, in the first instance, proceed with proof to establish the invalidity of the instrument. (Supreme Court rule 25, 370 Ill. 28.) In this case the will was duly probated, and was admitted to have been so done in the complaint. The will

then constituted *prima facie* proof of its validity and of the testamentary capacity of the testatrix, and it became incumbent upon the contestant to make proof sufficient to overcome the *prima facie* validity of the will.

In the examination of witnesses they were asked to relate conversations during the month of July, 1925, when the will was made, but out of the eight witnesses testifying four of them did not testify to any conversations. The conversations which the other witnesses had related to family matters and about the Bible, and in some instances about raising chickens and turkeys. Most of the witnesses were asked to state whether they had a conversation, and without having given it, were then asked to give their opinion as to the mental capacity of the deceased, to which objection was sustained by the court.

If the contestant intended to rely upon conversations it was necessary for the witnesses to relate the conversations in order that the court could determine whether, as a matter of law, they were of such a nature as to be the basis of an opinion on the soundness of mind, or merely a guess or suspicion. There was some evidence offered that the deceased was never strong physically, was timid, and perhaps below average mentality. There was no evidence offered as to her relationship with the members of her family, or as to the extent of her property. Some of the witnesses volunteered the opinion she had the mentality of a child. The contestant did not offer to show any conversations at or about the time of the execution of the will other than those testified to, and, under the authorities above, it was not error for the court to refuse to permit a witness to express an opinion based solely upon the appearance of the testatrix, without detailing a conversation or having some transaction with her. In *Miles* v. *Long,* 342 Ill. 589, this court held that "unsoundness of mind cannot be inferred from the proof of old age, distress or physical disability. A testatrix does not have to be absolutely of sound mind and memory in every respect in order to have suffi-

cient mental capacity to make a will. She must at the time she makes her will have sufficient mental capacity to know the natural objects of her bounty, to comprehend the kind and character of her property, to understand the particular business in which she is engaged, and to make disposition of her property according to some plan formed in her mind." There was no proof or offer of proof that the testatrix did not have this kind of capacity, but the questions were limited solely to whether she was of sound or unsound mind, generally. There was no error upon the part of the court in sustaining these objections.

As to the witnesses who were permitted to give an opinion: One of them testified that she was in a haze all of the time since she had known her; did not know whether she could read or write, but such testimony was principally about family relationships. The other witnesses based their opinions that testatrix had the mind of a child upon the fact that she was chiefly interested in chicken raising, and that whenever she came to visit she wanted to go out and hunt for eggs, no matter what the weather was. No evidence was offered as to any business transactions between the witnesses and the testatrix, or of other persons with her.

The rule is laid down in *Greenlees* v. *Allen,* 341 Ill. 262, that if the chancellor who heard the testimony is convinced that a verdict for the contestants must necessarily be set aside because the evidence, with all of its reasonable inferences and intendments, would not support the cause of action, it becomes the duty of the court to withdraw the issue from the jury and enter a finding, and many cases are cited which support this rule.

The evidence in this case fails to show any detailed conversations, but only the general purport of what was the subject under discussion, that the testatrix was queer, possibly in poor health, seemed to have undue curiosity about certain features connected with farming, and evidently did not have an acute intellect. On the contrary,

there is nothing to show she suffered from any delusions, or that she was not able physically to get around and attend to her own business and household, or that she did not know her family or property, or did not, in fact, transact business. No evidence was offered at all to show the state of mind of the deceased during the year 1928, the time the codicil was executed. The will and codicil were witnessed by four different individuals, who must have testified, when the will was probated, to her mentality at the time of the execution of the will.

It is our opinion that had this case been permitted to go to the jury on the evidence tendered and the jury had set the will aside, it would have been the undoubted duty of the court to vacate the verdict. It is not an unusual thing for a will to be executed at a time when age or sickness or natural infirmities have, to a certain extent, impaired the natural acuteness of the faculties, and it is not the policy of the law to permit a will to be vacated and set aside upon testimony that deals principally with the question of the fairness of the will. It has long been held that unequal bequests to heirs, or bequests to strangers to the exclusion of heirs, will be upheld, and are no grounds, in themselves, to annul a will. (*McGrady* v. *McGrady,* 298 Ill. 129; *Hauptman* v. *Graehl,* 343 id. 128.) Facts similar to those established in this case could be shown in almost any will contest involving a testator or testatrix who is queer, secretive, or not actively engaged in business.

We do not believe any sufficient facts have been shown to establish that the testatrix did not have testamentary capacity in July, 1925. No evidence at all has been produced as to such capacity in 1928, or none as to the claim of undue influence. The appellant failed to adduce testimony sufficient to submit to a jury the issues in the case.

The decree of the circuit court is affirmed.

*Decree affirmed.*