(No. 26808.—

JOHN W. KNUDSON *et al.*, Appellants, *vs.* HAROLD E. KNUD-
SON *et al.*, Appellees.

*Opinion filed January 21, 1943—Rehearing denied March 10, 1943.*

G. W. Horsley, Paul F. Wanless, and J. Thor Wanless, for appellants.

Graham & Graham, for appellees.

Mr. Chief Justice Stone delivered the opinion of the court:

By this direct appeal, review is sought of a decree of the circuit court of Sangamon county upholding the last will and testament of John K. Knudson, deceased. Appellants contested the will on the ground of lack of mental competency and undue influence. At the close of appellants' evidence the chancellor, on motion of the defendants, withdrew from the jury the issue of undue influence but

denied the motion to instruct the jury to return a verdict upholding the will. The latter motion was repeated at the close of all the evidence but was again denied. The jury returned a verdict finding for the contestants and the court granted a motion for judgment notwithstanding the verdict, denied the appellants' motion for new trial and entered the decree complained of here.

The errors complained of are: entering the judgment notwithstanding the verdict; withdrawing the issue of undue influence from the jury; and errors in ruling on evidence and examination of witnesses. Appellants insist that the trial court, in passing upon a motion for a judgment notwithstanding the verdict, is bound by the rules applicable to a motion for a directed verdict, and in this case, the court having refused a motion for a directed verdict, it was inconsistent to allow the motion for judgment *non obstante veredicto*. Under Rule 22 of this court the trial court's power to grant a motion for judgment notwithstanding the verdict is limited to cases where, under the evidence, it was the duty of the court to direct a verdict without submitting the case to a jury. The rule is that where there is any evidence tending to prove the cause of action, it is error to direct a verdict, and this is true in a will contest as well as in an action at law. (*Peters* v. *Peters,* 376 Ill. 237; *Geiger* v. *Geiger,* 247 id. 629; *Hurley* v. *Caldwell,* 244 id. 448; *Woodman* v. *Illinois Trust and Savings Bank,* 211 id. 578; *Hill* v. *Bahrns,* 158 id. 314; *Moyer* v. *Swygart,* 125 id. 262.) The question presented by a motion for a directed verdict, or for a judgment *non obstante veredicto,* is whether there is any evidence fairly tending to prove the cause of action or the fact affirmed. The court, on such motion, does not weigh the evidence nor consider its preponderance. *Peters* v. *Peters, supra; Greenlees* v. *Allen,* 341 Ill. 262; *Geiger* v. *Geiger, supra.*

The rule known as the "scintilla of evidence rule," applied in some jurisdictions,—that is, that if there is even

a scintilla of evidence tending to support plaintiff's case, the cause must be submitted to the jury,—is not followed in this State. The test of the existence of the right to have the cause submitted to a jury, as recognized in this State, is whether there is evidence in the record which, with all its reasonable inferences, taken in the aspect most favorable to the contestant, may be said to be sufficient in law to support the cause of action. (*Lewis* v. *Deamude,* 376 Ill. 219; *Burns* v. *City of Chicago,* 338 id. 89; *Bailey* v. *Oberlander,* 329 id. 568.) As was said by this court in *Greenlees* v. *Allen, supra,* "Under this rule, [just stated above,] if the chancellor who heard the testimony was convinced that a verdict for the contestants must necessarily be set aside because the evidence, with all its reasonable inferences and intendments, does not so support the verdict, it then became the duty of the court to withdraw the issues from the jury and enter a finding." Citing *Woodman* v. *Illinois Trust and Saving Bank, supra; Bartelott* v. *International Bank,* 119 Ill. 259, and *Simmons* v. *Chicago & Tomah Railroad Co.* 110 id. 340. So the question on this branch of the case is whether the chancellor erred in entering a decree upholding the will notwithstanding the verdict of the jury.

The rule as to proof of mental competency requires that such proof, to be competent, relate to a time at or near the time of the making of the will. Evidence of mental condition at other times, unless it can be seen that it tends to establish the condition of the testator at the time the will was actually executed, is wholly inconsequential. *Lewis* v. *Deamude, supra.*

In this case the will was executed on April 9, 1937. Thirty-nine witnesses have testified, twenty-three called by the appellants and sixteen by the appellees. This court would not be justified in extending this opinion to set out an analysis of the testimony of all these witnesses. Suffice it to say an analysis of the testimony shows that John K. Knudson was aged and infirm. He was eighty-eight years

of age at the time the will was executed. The attorney who drew the will was dead at the time of the trial. The evidence shows that he appeared at this attorney's office a few days before the day the will was executed and left instructions for its preparation, and that on April 9 he returned and executed it in the presence of the attorney, John A. Barber, and the witnesses to the will, who were employed in the attorney's office. No other person was present. The will is signed in four different places by the testator.

The evidence shows that John K. Knudson went to Farmingdale, Illinois, in 1881, the place where he was residing at the time of his death. He worked in a general store at Farmingdale with a brother, taught school, and acquired large holdings in farm lands. He appears to have been a man of unusually sound health until December, 1937, some eight months after the making of this will, when he went to a hospital in Springfield for an operation. The evidence shows him to have been a man keenly interested in current affairs and of more than usual intelligence. He made numerous talks at church and school affairs and was postmaster at Farmingdale for a number of years. He was a man of influence in the community. In the latter years of his life he was affected, as is usually so with persons of that advanced age, with a limitation of vision, reduced ability to get about, forgetfulness, failure to recognize at once those with whom he had but casual acquaintance, a lessening of hearing, and in the latter months, loss of control of some of his body functions. In short, he was an old man. However, until a short time before his death, June 28, 1941, over three years after this will was executed, he attended to his store, attended church, and on one occasion rented a small tract of land to one of the witnesses for the plaintiff, who thought the testator had overcharged him for the use of the land but who, nevertheless, thought him of unsound mind. The farm

owned by the deceased was operated by two sons, appellees Harold and Percy Knudson. It was located about eight miles from his home. His daughter Helen, a teacher in the Springfield schools, lived with him until her marriage in 1938, the year following the making of this will.

From 1925 until some four months after the making of the will, the evidence shows that the testator kept book accounts at his store including his own individual account and cash account. In December, 1936, he consulted A. H. Greening, an attorney in Springfield, concerning the making of a will. Greening had an interview with him of substantial length concerning the matter, and later drew a will and notified Knudson that it had been prepared. This will, however, was never executed. Greening, though called as a witness for appellants, was of the opinion that at that time, which was some four months before the making of the will in question here, Knudson showed a full comprehension and clear idea of what he wanted.

Examination of the testimony of the witnesses for the appellants will disclose that none of them testified to sufficient facts to afford a ground upon which to base an opinion as to the mental competency of the testator at or about the time of the making of this will, and the chancellor should have allowed the motion for a directed verdict at the close of plaintiffs' evidence.

Appellants also urge that it was error to withdraw the issue of undue influence from the jury. They say that in view of the testator's age and feeble condition he was easily subjected to undue influence and that once his physical and mental condition was shown by the evidence, such condition is presumed, as a matter of law, to continue, and because this is so, less evidence of undue influence is required. This statement of the rule is correct. However, it is necessary to determine whether the evidence in this record supports the application of such rule. It is also the rule that influence of or partiality for a child, coupled with per-

suasion by that child, to constitute undue influence, must go to the extent of depriving the testator of his free agency to make the will he desires. (*Blackhurst* v. *James,* 304 Ill. 586.) Undue influence which will invalidate a will must be such as to deprive the testator of free agency or destroy the freedom of his will and render it more the will of another than his own. Mere advice or personal persuasion or influence resulting from affection, do not constitute undue influence sufficient to set aside a will freely and understandingly made. *Quathamer* v. *Schoon,* 370 Ill. 606; *Ughetti* v. *Ughetti,* 334 id. 398; *Goff* v. *Gerhart,* 316 id. 513.

A reading and analysis of the testimony in this record shows that none of the competent evidence tended in any way to show undue influence. Appellants argue that the testimony of one witness that the testator was easily influenced, and the inequality in value of the lands given to the plaintiffs compared with that given to the defendants, constitute circumstances and inferences which, when taken with proof of the mental and physical condition of the testator, were sufficient to allow the case to go to the jury on the question of undue influence. Undue influence can not be established merely by inference, though circumstances may tend to do so. We are of the opinion, as stated, that there is nothing in this record that tends to indicate undue influence exercised over the testator. True, he was closer to some of his children than to others. That not infrequently happens in families where different members thereof are living in different places and under different circumstances. We are of the opinion that no error was committed in withdrawing the issue of undue influence from the consideration of the jury.

It is also argued that the chancellor erred in rulings on evidence in that appellants were deprived of the right to show that the testator had made declarations inconsistent with his will and indicating that it did not reflect his desires.

Declarations of a testator, made either before or after the execution of an alleged will, as to his testamentary intentions, are competent only on the issue of testamentary capacity. (*Hurley* v. *Caldwell, supra; Compher* v. *Browning,* 219 Ill. 429; *Dowie* v. *Driscoll,* 203 id. 480.) It is only, however, in connection with other proof of lack of mental capacity that declarations of his intention contrary to the terms of the alleged will are competent and proper to be considered. (*Hurley* v. *Caldwell, supra.*) Such other proof must relate to the period at or about the time of the making of the will. As we have indicated, this record contains no competent proof of lack of mental capacity at or about that time. None of appellants' witnesses testified to facts or circumstances sufficient to lay a ground of qualification to express an opinion as to the unsoundness of mind of the testator at or about the time of the making of this will. None testified to conversations, transactions or dealings with the testator at a reasonable time before or after making the will. The evidence shows that these conversations or transactions were not within periods of from a number of months to two years from the time of the making of the will. It cannot be said that such facts as were testified to tended to show a condition of the testator's mind on the date the will was executed, which is the test. (*Lewis* v. *Deamude, supra; Eschmann* v. *Cawi,* 357 Ill. 379; *Chandler* v. *Fisher,* 290 id. 440; *Todd* v. *Todd,* 221 id. 410.) Counsel argue that some of this testimony was not objected to. Evidence not objected to goes in for what it is worth, only, and if it is not worth anything as tending to substantiate or make proof of the point at issue, it makes no difference whether it goes in under objection or without it. Evidence that has no probative force cannot be considered in passing upon a motion for a directed verdict or for judgment notwithstanding the verdict.

Applying, in this case, the test hereinbefore stated, *i. e.,* whether there is any competent evidence in the record

which, standing alone, will support a verdict that the testator, when he executed the instrument purporting to be his last will and testament, was not of sound mind but was incapable of making a valid will, we are convinced from reading this record that it contains no evidence justifying the submission of the case to the jury on the question of unsoundness of mind. The trial court should have sustained defendants' motion at the close of plaintiffs' evidence for a directed verdict. It follows that it did not err in entering a decree for the defendants notwithstanding the verdict. The decree is therefore affirmed.

*Decree affirmed.*

Mr. Justice Thompson, dissenting.