Ida Maria Mower and Val A. Mower, Appellants, v. Herbert Williams, Appellee.

Gen. No. 9,568.

Opinion filed March 12, 1948.   Released for publication April 16, 1948.

COSTIGAN, WOLLRAB & YODER, of Bloomington, for appellants; JOHN E. CRIBBET and JAMES C. WOLLRAB, of counsel.

STONE & STONE, of Bloomington, for appellee.

MR. JUSTICE DADY delivered the opinion of the court.

This is an appeal by Ida Maria Mower and Val A. Mower, who are the plaintiffs appellants, from a judgment in favor of Herbert Williams, who is the defendant appellee, based on a verdict directed in favor of the defendant at the conclusion of all the evidence.

The case grows out of a collision on January 18, 1945, about 3:00 p. m., between an automobile and a snowplow in the intersection of State Routes 66 and 150.

The complaint charged the defendant with wilful and wanton misconduct and with ordinary negligence.

The only question presented is whether the trial court erred in directing a verdict in favor of the defendant.

In *Knudson v. Knudson,* 382 Ill. 492, 494, the court said: "The rule is that where there is any evidence tending to prove the cause of action, it is error to direct a verdict. . . . The question presented by a motion for a directed verdict, or for a judgment *non obstante veredicto,* is whether there is any evidence fairly tending to prove the cause of action or the fact affirmed."

Therefore our statement of the facts will cover only the undisputed facts and that part of the other evidence which is most favorable to the plaintiffs.

Route 66 was paved with concrete and ran in an easterly and westerly direction. In the center and on each side of the road except at the intersection was a strip of unpaved land, called a mall or parkway, 30.3 feet in width, which divided the east and west-bound traffic lanes. Two westbound traffic lanes were on the north side of the mall, and two eastbound traffic lanes were on the south side of the mall. On each side of the mall the road was paved with concrete 22 feet in width. Route 150 was paved with concrete 18 feet in width, and ran in a northerly and southerly direction. The two highways crossed each other at practically right angles. The pavement in the center of and approaching the intersection was widened on each route as is usual at such intersections. There was no stop sign on Route 66. On the easterly side of Route 150 there was a stop sign which was 8½ feet south of the pavement on the south lane of Route 66. Both roads were covered with snow and ice and were slippery. It was not snowing at the time and the weather was clear. Mrs. Mower received severe personal injuries, and the automobile of Mr. Mower was substantially damaged in the collision.

The plaintiff Val A. Mower, a then captain in the military service, was driving his car from his home in Michigan to Fort Smith, Arkansas. With him in the front seat were his mother-in-law and his daughter aged three years. His wife, who is the other plaintiff, was in the rear seat with their two children aged two and five years.

The defendant Herbert Williams, aged 61 years, was driving the snowplow northerly on Route 150 by means of a tractor. The plow was attached to and in front of the tractor. Attached to the rear of the tractor was a truck loaded with cinders. The collision occurred at a time when the front of the plow was on the most northerly lane for westbound traffic on Route 66.

Mr. Mower testified that when about 200 feet from the intersection, when traveling about thirty miles per hour, he saw the snowplow start up from behind the stop sign on Route 150 and start to cross Route 66; that he immediately applied his brakes gently, and blew his horn and flashed his headlights in an attempt to warn the driver of the snowplow; that the snowplow then appeared to be stopping at the mall so he released his brakes to prevent a slight swaying of his car, but continued to sound his horn; that the snowplow did not stop but pulled into the north lane of Route 66 when the automobile was about 100 feet from the place of the impact, and the left front fender of the automobile then struck the right rear portion of the snowplow. He further testified that after the accident he examined the windows of the tractor and found the right hand window full of snow and foggy, and that the windshield, except for the portion where the wiper was working, was covered with snow.

Mrs. Mower testified that when she first saw the snowplow it was stopped at the stop sign and the snowplow had just started to move from behind the stop sign on Route 150 when the automobile in which

she was riding was about 200 or 300 feet from the intersection; that when the snowplow first started across the intersection the automobile was about 150 feet from the intersection; that the snowplow seemed to stop at the mall and then proceed ahead, and the collision took place at a time when the automobile was going about ten miles per hour.

Cyrus Dunlap testified that at the time of the accident he was an employee of the State, and worked under the defendant Williams; that he had nothing to do with the driving, but it was a part of his work to take snow from the windows of the tractor; that he was seated in the tractor next to the east door of the cab; that there was snow and dirt on the windshield and door of the cab, and the glass on the east door was "plumb dirty"; that he could not see out of the east door, and that the windshield just had a "peep hole" where the windshield wiper worked; that the snowplow stopped at the stop sign and Williams said, "Is there any one coming?", that Dunlap opened the door and said, "Yes, down here on the curve are two cars, we can make it if we go now"; that Williams said, "We can't go now, there are two cars coming from the west," that "We set there and waited for them to go by a couple of minutes I guess, I don't know. I could not tell whether one of those cars was the captain's, I don't know who they were. I just saw them for a minute and closed the door. Then after a period of one and a half or two minutes we were sitting there and I heard a racket and the next thing I knew we were moving and Williams had not said a word to me, and I threw open the door and they were just right on us. I said, 'Herb, stop, we are going to be hit,' and he threw on his brakes and did everything to come to a stop, but we were hit."

Ike Albertson testified that he was riding in the cab of the tractor as a passenger with the permission of the defendant, and was seated between the defendant

and Dunlap; that as the snowplow came up to the junction it stopped, and the defendant then opened the west door and looked to the left, and Dunlap opened the east door and looked to the right, and the defendant asked Dunlap, "How it it?" and Dunlap said, "It is alright to go now," and Williams then said, "There are two cars coming, we can't go, we will have to wait a minute," so the snowplow stood still for about two minutes, and the defendant then closed his door and pulled across, then slowed down in the middle of the intersection but did not come to a dead stop and then speeded up and headed out to about the middle of the north half of the intersection; that the north window of the cab was all covered with snow and mud; that there was a small peep hole where the windshield wiper was which was approximately eight by six inches.

Barton Molsinger testified that he was driving north on Route 150 and stopped behind the snowplow at the stop sign; that he first saw the Mower automobile at a time when it was about 300 feet east of the intersection and at a time when the snowplow was standing still; that he heard the Mower automobile toot its horn twice, but the snowplow then started ahead and the collision took place.

Defendant calls attention to par. 120 (d), ch. 95½, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 85.152, subd. (d)] relating to motor vehicles which provides "The provisions of this Act shall not apply to persons, teams, motor vehicles and other equipment while actually engaged in work upon the surface of the highway but shall apply to such persons and vehicles when traveling to or from such work." Defendant then says that the plaintiffs counted upon and showed no violation of any duty by the defendant, except those duties arising under the specific provisions of the Motor Vehicle Code. There is no merit to this contention. Counts 1 and 2 of the complaint

also allege a common-law duty and breach by the defendant.

The trial judge stated of record that the reasons for his directing such verdict in favor of the defendant were: (1) There was insufficient evidence of wilful and wanton conduct to go to the jury; (2) the defendant is not liable because of common-law governmental immunity; (3) the defendant is not liable because of statutory immunity. The defendant now makes the same contentions.

Aside from the question of immunity, it is our opinion that both plaintiffs made a prima facie case of liability of the defendant on the charges of wilful and wanton misconduct and ordinary negligence.

The important and crucial question is whether the defendant, by reason of his employment, was immune from liability for either actionable wilful or wanton misconduct or negligence on his part which might have caused or proximately contributed to cause the injuries proven.

The defendant testified that his designation was that of a "maintenance man" in charge of a particular district; that he was appointed to such position by three precinct committeemen; that his job was to keep clean the shoulders of the road, patch holes in the concrete and remove snow from the highway, and that Dunlap was his helper and "supposed to watch" Dunlap's side of the tractor. In our opinion the defendant was merely an employee and not an officer of the State. (See *People v. Coffin*, 282 Ill. 599, 606.)

No Illinois case has been cited to us and we have found none in which the liability of such an employee has been passed upon.

In 43 Am. Jur., sec. 279, p. 91, it is said: "A public officer as a rule is answerable to private persons who sustain special damage resulting from the negligent performance of the officer's imperative or ministerial duties, unless the wrong done is a violation of a duty

which he owes solely to the public.'' In 40 A. L. R. p. 39, in an annotation, it is said that most of the jurisdictions hold that a public officer is liable for personal injuries resulting from his negligence where the duty imposed on him of keeping the streets or highways in repair is ministerial in character and not judicial or discretionary. (See also *McQuillin on Municipal Corporations,* sec. 536.)

In *People v. Bartels,* 138 Ill. 322, 328, the court said: ''But where the duty imposed on an officer is purely ministerial, he will be held liable for an injury to another which results . . . from his performance of it in a negligent or unskillful manner. . . . Official action is ministerial when it is the result of performing a certain and specific duty arising from fixed and designated facts. The same officer may be charged with the performance of both judicial and ministerial duties, and when he is in the exercise of his ministerial functions only, he is, of course, not protected by the judicial privilege.'' (See *Johnston v. City of Chicago,* 258 Ill. 494, 498; see also *City of Chicago v. Seben,* 165 Ill. 371, 379.)

*Nagle v. Wakey,* 161 Ill. 387, is largely relied on by the defendant. In that case it was held that the commissioners of highways of a township were not liable to one who was thrown, with his team and wagon, from a bridge because of the alleged negligence of the commissioners in failing to provide such bridge with railings. The court there said: ''Although duties are specifically enjoined upon towns by law, . . . they are not liable, in a common law action, for damages sustained by an individual on account of such action being neglected or inadequately performed. . . . The reasons always given for exempting towns from such actions are, that they are established as local subdivisions and agencies of the State for governmental purposes, and that duties are imposed upon them without their assent, exclusively

for public purposes. The same reasons apply, with at least equal force, to commissioners of highways as an agency through which a town performs a public duty. Any person elected to that office who shall refuse to serve is subject to a penalty of $25. . . . The office and its duties are compulsory, and are imposed upon the individual for public purposes, in like manner as upon the town. The courts draw a distinction between the town and the municipal corporation proper, on the question of liability, in favor of the town, and it would seem most unjust to reverse the rule as to the town officer and hold him to the same responsibility as a city or other municipal corporation. It is questionable whether such a rule would tend to any better service of the public. If the officer must answer out of his private fortune for what a jury may regard as a deficiency in judgment, men capable of filling the office, who have any property, would naturally avoid it,—especially in view of the extent of the industry of bringing damage suits covering with duties and neglects every field of imagination as well as of fact. The statute has provided means for redressing the public wrong by a penalty, and that is sufficient to enforce the public duty.'' Defendant also cites *Neinsteil v. Smith,* 21 Ill. App. 235; *Neville v. Viner,* 115 Ill. App. 364; *VanMiddlesworth v. Hill,* 161 Ill. App. 592; *Huffstuttler v. Crabtree,* 197 Ill. App. 191; *Scovill r. Lange,* 204 Ill. App. 82, and *Crowder v. Emery,* 206 Ill. App. 562. All of such cases were cases in which highway commissioners were defendants.

In *Taylor v. City of Berwyn,* 372 Ill. 124, the suit was against the city and one Thomas Bartunek. While Bartunek, as a police officer, was rapidly driving a police car in pursuit of another car carrying persons suspected of murder, the police car ran into and overturned a third vehicle which was thrown onto the sidewalk and killed an innocent bystander. The suit was by the administrator of the estate of the deceased and

charged ordinary negligence,—not wilful or wanton misconduct. The Supreme Court there held that both defendants were at the time of the accident engaged in the performance of a governmental function and that therefore neither defendant was liable for negligence in so doing.

In *LaCerra v. Woodrich*, 321 Ill. App. 107 (decided after the *Taylor* case) the court held that under the particular facts a police officer while driving a police car in the performance of his duties could be found guilty of actionable wilful and wanton misconduct. In that case the court said on pages 113 and 114: "Defendant cites authorities that adhere to the rule that a municipality is not responsible for the unlawful or negligent acts of policemen in the discharge of their public duties, *even though the conduct of the policeman is of a malicious nature,* and defendant strenuously argues that the courts cannot logically give such protection to the municipality 'without also giving to the police officer *protection co-extensive with that of the municipality.'* . . . We do not think that any respectable authority can be found that would support the proposition of law urged by defendant."

*Montanick v. McMillin*, 225 Iowa 442, 280 N. W. 608, we believe, is a well considered case in which the court cites and quotes from several decisions of Iowa and other State courts. In that case the defendant, while driving a truck belonging to the county and engaged in doing work for the county on a public highway, injured a boy riding a bicycle on a sidewalk. In holding the defendant liable for his negligence, the court said, "Public service should not be a shield to protect a public servant from the consequences of his personal misconduct," and quoted with approval the following language from *Ottmann v. Incorporated Village of Rockville Centre,* 275 N. Y. 270, 9 N. E. (2d) 862, 863, 864: "Sound public policy requires that one injured by the negligent act of another engaged in a public

service should be permitted to recover the damages suffered as a result of such misconduct. Public service should not be a shield to protect a public servant from the result of his personal misconduct. . . . We believe the law to be that a servant, agent or officer of a municipality is required to do his work in a reasonably careful manner and that if he fails to do so and another is injured because of his negligence he is personally responsible, the same as any other person who has by his misconduct caused injury.'' (See also *Shirkey v. Keokuk County*, 225 Iowa 1159, 275 N. W. 706, 281 N. W. 837; *Wynn v. Gandy*, 170 Va. 590, 197 S. E. 527; *Rankin v. School Dist. No. 9*, 143 Ore. 449, 23 P. (2d) 132; *Palmer v. Marceille*, 106 Vt. 500, 175 Atl. 31; *Miller v. Jones*, 224 N. C. 783, 32 S. E. (2d) 594.)

We do not consider that the reasons given in *Nagle v. Wakey*, 161 Ill. 387, *supra*, in the Appellate Court cases above cited, and in the case of *Taylor v. City of Berwyn*, 372 Ill. 124, *supra*, why highway commissioners and the particular police officer should not be personally liable for their negligence are controlling or persuasive on the question of whether the defendant in the instant case is immune from liability for negligence or wilful and wanton misconduct in doing the particular work that he was doing at the time of the collision. It is our opinion that at and immediately prior to the time of the collision the defendant was performing a purely ministerial act that did not then require the exercise of any judgment or discretion; and the fact that he was then employed by the State should not shield him from liability for either negligence or wilful and wanton misconduct on his part. It is our opinion that to so shield him would be against the public interest and against public policy. Therefore it is our opinion that the trial court erred in directing a verdict on the wilful and wanton misconduct charges and on the ordinary negligence charges.

The judgment of the trial court is therefore reversed and the cause is remanded for a new trial.

*Reversed and remanded for a new trial.*