Albert Palmer, Minor, by Charles Palmer, Father and Next Friend, Appellant, v. LeRoy Loveless et al., Defendants. LeRoy Loveless, Appellee.

Gen. No. 9,710.

Opinion filed November 2, 1950.
Released for publication November 28, 1950.

D. A. McGRADY, of Carlinville, for appellant.

SNELL & SEYFRIT, of Carlinville, and JASPER WENZEL, of Gillespie, for appellee.

MR. JUSTICE DADY delivered the opinion of the court.

This personal injury suit was brought by the plaintiff appellant, Albert Palmer, a minor, by his father and next friend, against the appellee, LeRoy Loveless, for personal injuries received by plaintiff on May 15, 1946, when struck by an automobile driven by defendant's agent, Leo Fellin.

The charges of negligence were that Fellin, as such agent (1) drove the automobile at a high and dangerous rate of speed and so carelessly and negligently that

the automobile ran against and over plaintiff, and, (2) drove said automobile at a high and dangerous rate of speed in excess of twenty miles per hour in violation of sec. 49, par. 146 of the Motor Vehicle Act [Ill. Rev. Stat. 1949, ch. 95½, par. 146; Jones Ill. Stats. Ann. 85.178], and, (3) drove said automobile at about 7:30 p. m. after sunset without lights, in violation of sec. 103, par. 200 of such Act [Ill. Rev. Stat. 1949, ch. 95½, par. 200; Jones Ill. Stats. Ann. 85.232], and in violation of his duty to have two lighted lamps on such automobile.

The trial court reserved its ruling on a motion made by the defendant at the conclusion of all the evidence to direct the jury to return a verdict of not guilty.

Thereafter and on October 25, 1949, the jury returned a verdict of $3,500 for plaintiff.

The report of the trial proceedings states, "Motion for directed verdict at close of all evidence allowed." No order was entered on such motion.

The procedure in the trial court on the entry and disposition of motions is somewhat confusing. The record, so far as is material, shows the following: On October 31, 1949, defendant filed his written motion for a judgment in his favor notwithstanding the verdict. On November 15, 1949, the defendant filed his written motion for a new trial. On November 19, 1949, an order was entered allowing defendant's said motion for a new trial. On November 22, 1949, an order was entered allowing defendant's motion for judgment notwithstanding the verdict. Counsel for defendant states in his brief that the motions for judgment notwithstanding the verdict and for a new trial were both presented to the court on November 19, 1949, "and were allowed." The report of the trial proceedings states that "at a later date," (date not shown) defendant entered his motion for judgment notwithstanding the verdict and then moved the court

to set aside the verdict and grant a new trial, and that thereupon the court sustained such motion for a judgment notwithstanding the verdict and sustained the motion for a new trial. The notice of appeal is also informal or irregular in that it states that the appeal is from the ''order entered . . . on November 19, 1949, wherein it was ordered . . . that the motion of defendant for a judgment in his favor be and was thereby granted . . . notwithstanding the verdict.'' Such notice then prays that the order of November 19 be reversed and the cause remanded with instructions to enter judgment for plaintiff on the verdict or that such other order or orders be entered as to this court may seem just in the premises.

Counsel for defendant in his brief says the orders of November 15 and November 19 were actually entered on the same day.

Plaintiff contends that because the defendant failed to file his motion for a new trial simultaneously with his motion for judgment *n. o. v.* ''as required by Supreme Court Rule 22 [Ill. Rev. Stat. 1949, ch. 110, par. 259.22; Jones Ill. Stats. Ann. 105.22],'' and because the trial court did not pass upon and decide in the same manner these motions as required by such rule, the right to file the motion for a new trial was lost. Plaintiff concludes by asking that our court enter judgment for plaintiff on the verdict.

In support of such contention the plaintiff cites *Todd v. S. S. Kresge Co.,* 384 Ill. 524. In the *Kresge* case the defendant did not make any motion for a new trial. In the instant case, as already shown, the defendant's motion for a new trial was filed after his motion for judgment *n. o. v.* was filed, but was filed while such motion for judgment was pending and undisposed of. In the *Kresge* case the Supreme Court was not confronted with the problem of whether if a party inadvertently files his motion for judgment, without accom-

panying it with an alternative motion for a new trial, he can later in the sound discretion of the trial court, properly file and present his motion for a new trial before the motion for judgment is disposed of. In the instant case the plaintiff made no motion to strike either of defendants' motions. If such a motion had been made while the two motions of defendant were pending and undisposed of, we believe the trial court could properly have allowed the defendant's motions to be withdrawn and a proper combined alternative motion to be filed by defendant.

If we were to hold that plaintiff's contention is correct, then we also might be required to hold that plaintiff's notice of appeal is materially defective, because it states that the plaintiff appealed (only) from the order of November 19,—the record showing that the order of November 19 only disposed of the motion for a new trial.

Notwithstanding such irregularities, we are considering and passing upon the cause on the merits.

As the case is presented, we consider that the only question we are required to pass on is whether the trial court erred in entering judgment for the defendant notwithstanding the verdict.

 The question presented by a motion for a directed verdict, or for a judgment *non obstante veredicto*, is whether there is any evidence fairly tending to prove the cause of action or the fact affirmed. The court, on such motion, does not weigh the evidence nor consider its preponderance. (*Knudson v. Knudson*, 382 Ill. 492, 494.) Whether a plaintiff was guilty of contributory negligence is ordinarily a question of fact for the jury to decide. (*Ziraldo v. W. J. Lynch Co.*, 365 Ill. 197.) Negligence does not become a question of law alone unless the acts constituting it are of such a character that all reasonable men would concur in pronouncing them so. (*Berg-v. New York*

*Cent. R. Co.,* 391 Ill. 52, 63.) A motion to direct a verdict for the defendant and a motion by the defendant for judgment notwithstanding the verdict preserves for review only a question of law whether from the evidence in favor of the plaintiff, standing alone and when considered to be true, together with the inferences which may legitimately be drawn therefrom, the jury might reasonably have found for the plaintiff. The court cannot weigh the evidence to determine as a matter of fact whether the plaintiff was guilty of contributory negligence, and cannot reject testimony as improbable unless contrary to some natural law. (*Ziraldo v. W. J. Lynch Co.,* 365 Ill. 197, 199.)

Applying such rules of law we will state and consider only the uncontradicted evidence and the evidence most favorable to plaintiff.

The accident occurred on May 15, 1946, about 7:30 p. m. on a northerly and southerly paved street, in the business section about midway between two intersecting streets, in the City of Gillespie, Illinois. The night was cloudy but the pavement was dry. In the center of the street was a single streetcar track. On the easterly side of the street was located a bowling alley. The plaintiff, while crossing from in front of the bowling alley and going in a westerly direction toward the west side of the street, was struck and severely injured by defendant's automobile, which was then going southerly on the westerly side of the street.

The plaintiff Albert Palmer testified that at the time of the accident he was aged 14 years and worked part time setting up pins in a bowling alley; that he was to start work on the night of May 15 at about 7 p. m.; that prior to starting work he and two other boys, John Campbell and William Davidson, started westerly across the street to get ice cream; that they were abreast of each other, William being on the north, John in the middle, and the plaintiff on the

south; that when he got across the streetcar tracks he was struck and knocked down by defendant's car and slid down the road; that after he was knocked to the pavement he turned his head and saw some lights ''come on'' on the car that struck him; that he ''was running across the street, not fast,'' just jogging, and the other boys were also running, but not fast, and not racing; that he had no chance to observe the front of the car at the time he was struck; that the car was coming from the north and he did not see any lights on the car before he was struck; that it was dusk, and the street lights were on and there were electric lights strung along the east side of the street, and the area was well lighted; that when he got to the streetcar tracks he glanced to the north but did not see defendant's car; that he was about ''a foot off the road'' from the streetcar tracks when he was hit by the left front of the car, but he did not see the car; that the lights were not on the car; that he turned his head and saw the car coming without lights and tried to get away and could not make it; that after the accident he was lying on the pavement about ten feet in front of the car; and that after he got to the hospital he said to his mother, ''Don't blame Fellin, mom, I ran into the car.''

John Campbell, aged 17 at the time of the trial in October 1949, testified that he and the two other boys started westerly across the street to get some ice cream; that he looked toward the south but did not remember looking toward the north and they all started running; that when he got to the streetcar tracks he looked but did not see defendant's car, and ''I don't know what made me stop, I just stopped all of a sudden and there was a car right in front of me and I hollered''; that he saw no lights on the

car at the time, but after the accident went in front of the car and "there were lights burning then but not before the accident"; that he guessed plaintiff laid on the pavement about twenty-five feet in front of defendant's car, and that he remembered telling defendant's attorney on the morning of the trial that he said to the other boys: "The last one across is a monkey."

William Davidson, aged 17 at the time of the trial, testified that he and the other two boys started across the street "at a slow run, trotting"; that they were not running but trotting and the trot was faster than a walk; that when he started across he looked both north and south, but did not see defendant's car; that while going across he saw no car coming from the north, that he first noticed defendant's car when it hit plaintiff, and he, the witness, "couldn't stop fast enough" and hit the car with his hands to keep his balance; that after the accident plaintiff laid about ten feet in front of defendant's car; that at the time of the accident defendant's car was close to and about 2½ feet west of the streetcar track; that when he contacted the car it was practically stopped and when he put out his hands and touched the car it stopped; that he could not say if the car was "moving very fast"; that he did not see any lights on the car before the accident, and that the place where he started across was a sort of travelway "where people cross there."

One witness for defendant testified that at the time of the accident defendant's car was going about seventeen miles per hour. Applying the foregoing rules of law, this court must assume as true that defendant at the time in question was driving his car without the headlights lighted, about seventeen miles per hour, on a main street in the business district of the city, that plaintiff was not running fast but merely jogging

67

across the street, and that when plaintiff got to the car tracks he glanced to the north but did not see the defendant's car.

In *Morrison v. Flowers*, 308 Ill. 189, an eight-year-old boy recovered a judgment of $3,250. In affirming same the court said at pages 196 and 197: "So far as this record shows, appellee had the right to run into the street at any point he chose. The law requires him to exercise due care for his own safety, and he is expected to enter the street with greater caution where persons are not ordinarily expected to enter than at intersections. On the other hand, a person operating a motor vehicle along the streets of a city is bound to recognize the fact that children will be found playing in the street and that they may sometimes attempt to cross the street unmindful of its dangers, and the driver owes the children the duty of reasonable and ordinary care under the circumstances. . . . The jury had a right to conclude from the evidence submitted that a rate of speed in excess of ten miles an hour across Bluff street,—a busy thoroughfare in the business portion of the city,—was unreasonable and dangerous under the circumstances and therefore unlawful, and that the injury to appellee was the direct result of such unlawful driving. When a motor vehicle is proceeding along at a lawful speed and is obeying all the requirements of the law of the road and all the regulations for operation of such machine, the driver is not, as a general proposition, liable for injuries received by a child who darts in front of the machine so suddenly that its driver cannot stop or otherwise avoid the injury; but if one is running his automobile at a speed in excess of the statutory limit or at an unreasonable or dangerous speed, he cannot escape liability because the child who is injured ran in front of the automobile so suddenly that the accident was then unavoidable. . . . Appellee stated that he

looked before he entered the space reserved for vehicles, but granting that he did not stop and look, it cannot be said, as a matter of law, that the failure to look will bar a recovery. . . . It is a question of fact for the jury to determine, in view of all the surrounding circumstances, whether the failure to look constitutes lack of due care.''

■ Assuming the testimony most favorable to plaintiff to be true, it is our opinion that the plaintiff made a prima facie case of due care on his part, and a prima facie case of negligence against the defendant, and that therefore the trial court erred in granting defendant's motion for judgment in favor of the defendant notwithstanding the verdict, and in entering such judgment in favor of defendant.

The order granting a new trial has not been appealed from.

The judgment of the trial court entering judgment in favor of the defendant notwithstanding the verdict is reversed, and the cause is reversed and remanded for such new trial.

*Reversed and remanded.*